**M. Hallsted CHRIST, Trustee in Bankruptcy of Gibraltor Amusements, Ltd., Plaintiff,**

v.

**VENDING ENTERPRISES, INC., et al., Defendants.**

**No. 60-C-1207.**

United States District Court
E. D. New York.
Feb. 15, 1961.

**486**

Joseph Jaspan, Brooklyn, N. Y., for trustee.

Harry T. Kirp, New York City, for Vending Enterprises, Inc., Vending Enterprises (Suffolk), Inc., Funds for Business, Inc., and Harold F. Levin.

Leinwand, Grossman & Maron, New York City, for Albert Simon, Inc., Isidore Leinwand, New York City, of counsel.

Abraham Pollack, New York City, for Admiral Trading Corp., Regal Music Corp., and Bedford Factor Corp.

Field, Florea & Field, New York City, for Continental Industries, Inc., Salvatore Alfano, New York City, of counsel.

ZAVATT, District Judge.

This is a plenary action brought by a trustee in bankruptcy pursuant to 11 U. S.C.A. § 46 to determine the rights to certain property (the nature of which will be fully described later) which the trustee claims are assets of the bankrupt estate and as to which several of the defendants have asserted adverse claims. The trustee served with his summons and complaint an order to show cause (1) why the defendants should not be enjoined, pending the final determination of the issues, from interfering with the operation of the property claimed by the trustee and (2) why certain defendants as holders of promissory notes given in payment for the assets of the bankrupt should not be enjoined, again pending the final determination of the issues, from transferring or negotiating the notes. On the return day of the order a hearing was held. There was no essential[1] objection to the first branch of the trustee's requested relief—in fact several defendants joined in the prayer—and an order was thereafter signed enjoining the interference complained of. Of the nine defendants who appeared, four defendants (all of whom are either makers of the notes or intimately related to the makers) joined partially in the trustee's prayer to enjoin transfer of the notes and five defendants (all of whom purport to

---

1. Two of these creditor-holders also claim to be owners of some of the assets claimed by the trustee, and on that basis entered an objection to any order which would forestall them from asserting their claims. However, they seem to have accepted the trustee's argument that unless the court acts to keep the wolves away there may be nothing to divide at the end.

be either holders, or former holders, in due course of the notes) opposed the prayer in all respects.

Gilbraltor Amusements, Ltd., the bankrupt, operated a jukebox and game route on Long Island comprising over five hundred (500) individual locations. A location is a right, probably in the nature of a license, to maintain a coin machine (be it jukebox, game, or vending machine) on the premises of another. The location as the right to maintain the equipment must be distinguished from the equipment itself. The form and formality of the agreement between the operator-licensee and the licensor varies greatly. In any event, the right to maintain a location is very valuable, the locations in this litigation selling for from forty to sixty times the weekly share of the operator. Sanford J. Moore, one of the defendants in this action, is the vice-president of Gibraltor. Gibraltor was only one of a group of Moore-dominated corporations[2] that were active in various phases of the coin machine industry. It is the trustee's contention that all of these corporations and Moore himself should be considered as a single entity.

On March 18, 1960, an involuntary petition in bankruptcy was filed against Gibraltor. Pending adjudication, the plaintiff, M. Hallsted Christ, served as receiver, and after adjudication as trustee. The receiver immediately took possession of the route operated by Gibraltor and operated it with the assistance of several former employees of Gibraltor, including Sanford J. Moore. There soon began to occur the transactions and activities complained of by the trustee. In capsule form, Moore through his agents, defendants here, sold to two newly formed corporations, also defendants here,

approximately one hundred and fifty (150) locations over which the trustee claims control. Payment was in the form of notes from the two vendee corporations. These notes have found their way after endorsement in blank by the payees into the hands of several creditors of several of the Moore corporations, and into other hands as well. To the extent that the notes have been traced to holders who took under suspicious circumstances those holders have been named as defendants. It is further alleged that after the sales Moore, through two of his corporations, began to repossess the locations he had just sold, without the permission of the vendees.

The complaint lists thirty-three (33) defendants.[3] At the time of the hearing on the return of the order to show cause, twenty-seven (27) defendants had either been served or had otherwise submitted themselves to the jurisdiction of this court.[4] The defendants may be roughly grouped in the following categories: (1) Moore-dominated corporations; (2) individuals acting as Moore agents or "dummies"; (3) creditors of Moore or his corporations and holders of the notes in issue; (4) vendees of property over which the trustee asserts ownership. On the return day of the order to show cause only defendants from categories (3) and (4) appeared.[5] The plaintiff presented evidence in the form of an affidavit of the trustee; the deposition of Bernard Levine, a defendant associated with the vendees, taken at a 21A examination; and an exhibit listing some of the locations claimed by the trustee. Four of the five creditor-holders appearing in opposition submitted the affidavits of their respective officers, and the court took the oral testimony of an officer of the fifth

---

2. Other Moore corporations are: (1) Sandy Moore Distributing Corp.; (2) Sandy Moore Manhattan Corp.; (3) Interstate Amusement Corp.; (4) Beth Vending Co., Inc.; (5) Peconic Amusement Corp.; (6) Justin Music Co., Inc.; (7) Perfect Vending Corp.; (8) Sak Trading Corp.; (9) Black Sales, Inc.

3. One defendant, Sidney S. Lewi, was

served with the summons and complaint but was inadvertently omitted from the show cause order.

4. Harold F. Levin does not seem to have been served but he appeared by counsel at the hearing.

5. As of the date of the hearing only one defendant had answered the complaint.

creditor-holder. No other evidence was offered. The court heard the oral argument of all the parties who appeared and also has the benefit of their legal memoranda and the transcript of what transpired at the hearing.

One of the ultimate issues upon the trial of this action will be whether the creditor-defendants are holders in due course of the various notes already referred to. This determination will depend in part on whether the various payees had good title, which in turn depends on whether they had the right to sell that which they sold. See New York Negotiable Instruments Law, McK. Consol.Laws, c. 38, §§ 94, 95, 98.

> "To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (*i.e.*, the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation."

Hamilton Watch Co. v. Benrus Watch Co., 2d Cir., 1953, 206 F.2d 738, 740. The affidavit of the plaintiff seeks to supply the data that will tip the balance of hardships in his favor and lead the court to exercise its discretion to grant the requested relief. See Rice & Adams Corp. v. Lathrop, 1929, 278 U.S. 509, 49 S.Ct. 220, 222, 73 L.Ed. 480. His argument boils down to this: the current holders of the notes of the vendees are not holders in due course. Therefore, the vendees will be able to assert against the holders the defenses that they (the vendees) have against the payees, and on the facts these defenses are valid and sufficient. This will preserve the assets of the vendees and enable them to respond in damages to the trustee on his claims against the vendees. On the other hand, although the present holders are not immune from attack they may be able, by negotiation to a third party who takes for value and without notice, to create a status in such third party such as to entitle it to enforce payment against the vendees all to the detriment of the bankrupt estate and the complication of issues on the trial. The vendees have already refused to make payment on the notes and they join in the request for an injunction against negotiation. However, the trustee has suggested that the holders be allowed to sue on the notes as they become due and has called upon the vendees to deposit with the Clerk of the court their indebtedness on the notes as they become due. To this suggestion, the vendees object. The trustee has suggested alternatively that, if the holders bring suit on the notes against the vendees, any recovery be paid into court to await the disposition of the issues raised in this action.

The five (5) creditor-holders who have appeared object to the provision enjoining further negotiations. They assert their holder-in-due-course status as a complete defense against any claim whether made by the trustee or the makers, but they do not otherwise point to any hardship in a financial sense that will result should an injunction be ordered. Indeed, two of the five creditor-holders have already disposed of the notes and so instead of arguing hardship, argue futility. But as the trustee points out, the notes were assigned with recourse and they may once again come into the hands of these defendants. In any event an injunction order would have to take these actualities into account.

Of course, lack of hardship will not suffice as a reason for granting an injunction if there does not also appear legal justification for the grant, *i.e.* a substantial claim for which an injunction is the appropriate relief. For this determination we return to the facts and the Negotiable Instruments Law. The trustee has made a very strong showing that the several sales of locations during the months of May to August, 1960, were fraudulent because the vendor had no title to the locations that he purported to

sell. Therefore, his title to the notes given in payment thereof is defective. New York Negotiable Instruments Law, § 93. Since the original payee's title was defective the burden is upon those who claim under him to establish that they are holders in due course, *i.e.* that they took for value and without notice (or knowledge of such facts as would amount to bad faith) of the aforementioned infirmities. New York Negotiable Instruments Law §§ 91, 95, 98. The trustee has offered enough facts as to each holder to make it doubtful in the extreme that any holder will be able to meet its burden. Thus there are "questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." See Hamilton Watch Co., supra [206 F. 2d 740].

The following are the court's Findings of Fact and Conclusions of Law:

### Findings of Fact

1. An involuntary petition in bankruptcy was filed against Gibraltor Amusements, Ltd. on March 18, 1960 and thereafter on March 21, 1960, M. Hallsted Christ was appointed receiver herein.

2. Gibraltor Amusements, Ltd. was thereafter adjudicated a bankrupt and M. Hallsted Christ was appointed Trustee in Bankruptcy and in that capacity brings this action.

3. At the time of the filing of the petition in bankruptcy, the bankrupt was engaged in the business of operating a jukebox and game route in Nassau and Suffolk Counties of the State of New York, the extent of which is set forth in Exhibit 3 submitted upon the hearing.

4. The plaintiff took constructive possession of all of the locations and equipment constituting the route at the time of his appointment as receiver and thereafter and during the month of April 1960 took actual possession of 247 of said locations with their equipment and continued to operate the business of the bankrupt,

pursuant to orders of the Bankruptcy Court.

5. The defendant Sanford J. Moore controlled the bankrupt and several other corporations allied with it. Either individually or through these several corporations he had been associated in the vending machine business with the defendant Bernard Levine who, in 1959, was an officer of the Sandy Moore Manhattan Corp.

6. (a) On April 29, 1960 (after the receiver had taken possession of the route of the bankrupt), the defendant Harold F. Levin organized the defendant Vending Enterprises, Inc., with its office and principal place of business at No. 459 Argyle Road, Cedarhurst, L. I., N. Y., the home of Bernard Levine.

(b) Thereafter, Harold F. Levin organized the defendant Vending Enterprises (Suffolk), Inc.

(c) Harold F. Levin is an attorney at law and a director of these two corporate defendants and a director of the defendant Funds for Business, Inc.

(d) These two Vending corporations employ several former employees of the bankrupt.

(e) All of the stock of these two Vending corporations is held by Funds for Business, Inc., a possible creditor of one or more of the four corporations.

(f) Bernard Levine is the manager of the two Vending corporations.

(g) The defendant Ruth Levine is the wife of Bernard Levine.

7. During the course of the bankruptcy proceedings some of the locations operated by the bankrupt were sold, or sales thereof were purported to have been made, as follows:

(a) May 1960, five (5) locations and equipment therein was sold by Ruth Levine to Vending Enterprises, Inc., for the sum of $10,000. Three of these locations are claimed by the plaintiff.

(b) June 28, 1960, twelve (12) locations were sold by the defendant Alfred Carpentier to Ruth Levine by a bill of sale for $26,778.50. She in turn imme-

diately sold the same to Vending Enterprises, Inc., which paid the sales price directly to Carpentier in the form of a $5,000 check to his order and $21,778.50 in promissory notes. This $5,000 check was immediately endorsed by Carpentier to the defendant George Becker (the attorney for Moore and several of his corporations including the bankrupt) who deposited the check in his special account.

(c) July 7, 1960, twenty-two (22) locations were sold by the defendant Harry Kay to Ruth Levine by a bill of sale for $45,000. She immediately sold the same to Vending Enterprises, Inc., which issued its promissory notes in that sum payable to Kay.

(d) July 12, 1960, thirty (30) locations were sold by the defendant Moses A. Kutlow to Ruth Levine by a bill of sale for $60,000. She immediately sold the same to Vending Enterprises, Inc., which issued its promissory notes in that amount to Kutlow.

(e) July 28, 1960, thirty-seven (37) locations were sold by Kutlow to Ruth Levine for $82,000. She immediately sold the same to Vending Enterprises, Inc., which issued its promissory notes in that sum to Kutlow.

(f) August 15, 1960, forty-seven (47) locations were sold by Harry Kay directly to the defendant Vending Enterprises (Suffolk), Inc., for $108,000 paid by seven (7) promissory notes of the purchaser to the order of Kay.

8. The purchasers made no investigation as to the existence of the locations purchased or of the right of the purported sellers to sell the same.

9. Each sale was negotiated by Sanford J. Moore who was present when the deals were made and in some instances was present when the deals were consummated, ostensibly as the broker. In addition, in each case save one, the purported seller was represented by George Becker.

10. Each sale was made without the knowledge or consent of the receiver or the trustee.

11. The notes from the various sales were endorsed in blank by the payee, i. e. Carpentier, Kay or Kutlow. These notes were thereafter negotiated to the following corporations (among others) for the purposes indicated:

(a) The defendant Albert Simon, Inc., in payment of the obligation of the defendant Interstate Amusement Corp., a Moore corporation. None of the notes held by this defendant bears the endorsement of Interstate although one does bear the endorsement of the defendant Sherwood Schwach, the president of Interstate and one of Moore's chief lieutenants.

(b) The defendant Continental Industries, Inc., in payment of the obligation of Sandy Moore Distributing Corp. These notes were delivered personally by the defendant Moore and do not bear the endorsement of the Sandy Moore Distributing Corp. The notes were thereafter assigned with recourse to James Talcott, Inc.

(c) The defendant Bedford Factor Corp., in payment of, or to further secure, the obligation of Sandy Moore Manhattan Corp. The notes do not bear the endorsement of Sandy Moore Manhattan Corp.

(d) The defendant Admiral Trading Corp., in payment of, or to further secure, the obligation of four Moore corporations including the bankrupt. These notes were also delivered by Moore personally and do not bear the endorsement of any of the four corporations for whose obligations they were taken. Admiral Trading Corp. thereafter assigned these notes to its affiliate, the defendant Regal Music Corp.

(e) Sak Trading Corp.

(f) Black Sales, Inc.

These last two Moore corporations may be holding the notes for future use of Moore.

12. The vending machine industry in general knew of the difficulties of Moore and his corporations. The holders of the notes enumerated in these findings knew

or should have known that Gibraltor Amusements, Ltd. was bankrupt at the time when they received these promissory notes and the purported purchasers of these locations knew or should have known that they were an asset of Gibraltor Amusements, Ltd.; that Gibraltor was a bankrupt at the time of each alleged purchase and at the time that the purchasing corporations executed and delivered their promissory notes.

13. After the sales just described were made, Moore, through the defendants Perfect Vending Corp., and Interstate Amusement Corp., repossessed some of these locations without the consent of the purchasers, the two Vending corporations.

14. Further negotiation or transfer of the notes may have an adverse effect upon the trustee's claims asserted in this action. No financial hardship will accrue to the present holders if they are enjoined from transferring or negotiating these notes.

### Conclusions of Law

1. The defendants Carpentier, Kay and Kutlow had no title to the locations that they purported to sell.

2. Carpentier, Kay and Kutlow acted as the agents for the defendant Sanford J. Moore in these sales.

3. Sanford J. Moore had no authority to sell these locations.

4. Carpentier, Kay and Kutlow had defective title to the notes given in payment for the locations.

5. The holders of the notes have the burden of proving that they are holders in due course of these notes.

6. On the evidence as adduced it is doubtful that the holders will be able to sustain this burden since it seems probable that they knew or should have known of the defects in title of those from whom they took.

7. An injunction against further negotiation or transfer by the current holders of the notes is an appropriate temporary remedy.

The plaintiff's motion is granted. The plaintiff will settle an order for the relief prayed for in his motion, consistent with this opinion and the above Findings of Fact and Conclusions of Law, on or before five (5) days from the date hereof.