**FREQUENCY ELECTRONICS, INC.,**
**Plaintiff,**

**v.**

**NATIONAL RADIO COMPANY, Inc. and**
**Louis Lerner, Defendants.**

No. 72 Civ. 412.

United States District Court,
S. D. New York.

May 16, 1972.

Pryor, Braun, Cashman & Sherman, New York City, for plaintiff; Sanford M. Goldman, New York City, of counsel.

Leonard I. Schreiber, New York City, for defendant Louis Lerner.

## OPINION

MacMAHON, District Judge.

This is an action for a declaratory judgment that a promissory note made by plaintiff Frequency Electronics, Inc. ("Frequency") is void, and for damages for an alleged breach of warranty and fraudulent misrepresentation in the assignment of a patent. Frequency moves, pursuant to Rule 65, Fed.R.Civ.P., preliminarily to enjoin defendant Louis Lerner ("Lerner") from endorsing, transferring, negotiating, or enforcing the note, or from obtaining rights of acceleration thereunder pending the outcome of this action.

The action was originally commenced in the Supreme Court of the State of New York and removed to this court by defendants pursuant to 28 U.S.C. § 1446. A temporary restraining order entered by the state court remains in effect under 28 U.S.C. § 1440 pending the outcome of this motion.

The action stems from the purchase, on February 3, 1969, by Frequency of certain assets of defendant National Radio Company, Inc. ("National"), including a patent for a "molecular beam apparatus" or "atomic clock" developed by Dr. Jerrold R. Zacharias. Frequency paid for the assets in part with two promissory notes, one of which, in the face amount of $325,000, is the subject of this motion. The note was subsequently acquired by defendant Lerner, a former director and principal shareholder of National, who, claiming to be a holder in due course, is asserting his right to an installment payment of $32,000 due on February 3, 1972. The note provides that in the event of a default the entire unpaid balance, currently $260,000, is immediately due and payable.

Frequency asserts two claims against National and Lerner, the first to declare the note void for lack of consideration on the ground that the patent for which it was given is invalid, and the second for damages on the ground that National breached its warranty of title and that, together with Lerner, fraudulently misrepresented the patent's validity. Frequency moves for a preliminary injunction on the first claim, staying Lerner from transferring the note to a holder in due course, in order to preserve its claim of failure of consideration.

A preliminary injunction is granted in the discretion of the court when the moving party can demonstrate immediate and irreparable harm if injunctive relief is denied and a substantial likelihood of ultimate success on the merits. However, the burden of showing probable success is less where plaintiff "has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation" and "the balance of hardships tips decidedly toward plaintiff." [1]

Frequency clearly establishes immediate and irreparable harm if the preliminary injunction is denied, since negotiation or transfer of the note by Lerner to a holder in due course would cut off Frequency's defense of failure of consideration, rendering futile its claim for declaratory relief.[2]

Whether Frequency demonstrates a substantial likelihood of success is a more difficult question. Frequency can succeed on its claim that the note is void for failure of consideration

1. Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953).

2. Osborn v. United States Bank, 22 U.S. (9 Wheat.) 738, 845, 6 L.Ed. 204 (1824);

Christ v. Vending Enterprises, Inc., 191 F.Supp. 485, 488–489 (E.D.N.Y.1961); 4 J. Pomeroy, Equity Jurisprudence § 1340 (5th ed. 1941).

only by demonstrating that the patent is invalid [3] and that Lerner is not a holder in due course.[4]

Frequency's contention that the patent is invalid rests on 35 U.S.C. § 102(b), which provides, in pertinent part, that a person shall be entitled to a patent unless:

"the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."

■ Frequency offers substantial evidence to show that the atomic clock was in public use, or on sale in this country, prior to October 29, 1957, the date of the patent application. It appears that National held a press conference on October 4, 1956 to demonstrate that the atomic clock was in National's words, "available for commercial and military use." Further, the clock was undergoing evaluation by the navy as a potential customer at the Naval Research Laboratories as early as September 1956. Thus, it is apparent that the atomic clock was a completed and operational invention at the time of the press conference and that National had begun a campaign to market the device. We cannot say, simply on the basis of these facts, however, that the patent in question is invalid. Nonetheless, we think Frequency has demonstrated a substantial likelihood of success on the issue of validity upon the trial.[5]

Frequency's contention that Lerner is not a holder in due course hinges on whether the patent is in fact invalid and, if so, whether Lerner knew it during, or prior to, the sale of the patent. The heart of Frequency's proof is an affidavit of Martin B. Bloch, president of Frequency, alleging that he met with Lerner in the latter's New York office and that Lerner made false representations concerning the patent in order to induce the purchase of National's assets. Beyond the assertion that Lerner was a principal figure in National's affairs during the transaction, Frequency offers no other evidence to support its claim that Lerner knew the patent was invalid at the time.

Lerner acknowledges meeting with Bloch, but vigorously denies any misrepresentation or knowledge of the invalidity of the patent. Despite his denials, however, which in the last analysis turn on a myriad of facts bearing on the validity of the patent and Lerner's state of mind with respect to those facts, we think that as a principal figure in National's affairs, Lerner is chargeable, at least inferentially, with knowledge of the facts recited above which demonstrate the likelihood of invalidity of the patent.

Moreover, plaintiff's showing of a likelihood of success on the merits is aided by § 3–307 of the Uniform Commercial Code, which provides that once a defense to the note has been shown, the burden is on the party claiming to be a holder in due course, here, Lerner, to prove that he is in fact a holder in due course, i. e., that he took for value and without notice of the patent's alleged invalidity. Given Lerner's undisputed link

3. The purchase and sale agreement between Frequency and National provides that: "This agreement shall be governed in all respects by the laws of the State of Massachusetts." Since the choice of law question was not raised by either party we simply note that under both New York and Massachusetts law a note given in payment for an invalid patent is void for failure of consideration. Stentor Elec. Mfg. Co. v. Klaxon, 115 F.2d 268 (3d Cir. 1940), rev'd on other grounds, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Nash v. Lull, 102 Mass. 60 (1869).

4. Uniform Commercial Code § 3–306(c).

5. See Atlas v. Eastern Air Lines, Inc., 311 F.2d 156, 158–162 (1st Cir. 1962), cert. denied, 373 U.S. 904, 83 S.Ct. 1290, 10 L.Ed.2d 199 (1963); Koehring Co. v. National Automatic Tool Co., 362 F.2d 100, 104 (7th Cir. 1966); Aerovox Corp. v. Polymet Mfg. Corp., 67 F.2d 860, 862 (2d Cir. 1933).

with National as a former director, shareholder, and member of the executive committee, we think plaintiff has raised serious doubts about Lerner's ability to prove his status as a holder in due course.[6]

Accordingly, while plaintiff's showing falls somewhat short of a clear demonstration of ultimate success on the merits, nonetheless, we think it has satisfied its burden of raising questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for *more* deliberate investigation. Plainly, the balance of hardships, if an injunction is denied, tips decidedly in plaintiff's favor.

This is not a case where the granting of a preliminary injunction would be tantamount to complete and final relief for plaintiff. Rather, this is simply a case where the granting of a preliminary injunction will perform its ancient function of maintaining the status quo pending trial.[7] There has been no showing of any urgency requiring immediate resolution by an advanced plenary trial of the issues posed in this action. Nor do we see any serious injury to Lerner if he is compelled to await the ultimate resolution of the issues before negotiating the note, provided plaintiff post a bond adequate to protect Lerner against loss.

Accordingly, the motion for a preliminary injunction is granted upon condition that plaintiff post a bond, in an amount to be fixed by the court in the order to be settled on this decision.

The foregoing constitutes this court's findings of fact and conclusions of law, as required by Rule 52, Fed.R.Civ.P.

Settle order on notice within ten (10) days.

6. Hamilton Watch Co. v. Benrus Watch Co., *supra*, 206 F.2d at 740; Christ v. Vending Enterprises, Inc., *supra*, 191 F. Supp. at 488–489.

7. Chappell & Co. v. Frankel, 367 F.2d 197, 202 (2d Cir. 1966).