IN RE ESTATE OF STEVEN V. CARTER, deceased.

DECATUR COUNTY STATE BANK, appellant, v. LUCILLE K. CARTER, executrix of estate of Steven V. Carter, appellee.

No. 50565.

(Reported in 116 N.W.2d 419)

JULY 24, 1962.

REHEARING DENIED SEPTEMBER 18, 1962.

Gamble, Read, Howland, Gamble & Riepe, of Des Moines, for appellant.

Killmar & Reynoldson, of Osceola, for appellee.

MOORE, J.—Plaintiff-bank filed a claim in probate for $2250 on a note against the estate of Steven V. Carter. Defendant-executrix admitted the execution of the note. By answer and counterclaim she alleged there was an oral agreement by the bank with decedent to procure credit life insurance to cover the unpaid balance of the note, which the bank negligently breached, and claimed damages to the estate of $2250. The trial court ruled for defendant and offset the damages against the amount owing on the note. Judgment entered against plaintiff for costs. Plaintiff has appealed and relies on three propositions for reversal. The trial court erred in holding: (1) The bank had a duty to procure credit life insurance upon the life of Carter or to notify him it was unable to obtain such insurance and negligently breached such duty; (2) the bank's failure to give notice to Carter of his failure to obtain life insurance was the proximate cause of any pecuniary loss to him or his estate; (3) that erroneous statements made after the note was executed constituted actionable negligence and created a legal liability.

We believe plaintiff-appellant has a misconception of the trial court's findings and the questions presented to us. The action was tried at law without a jury. The decision below on the facts has the force and effect of a jury verdict. It is not reviewable de novo but only upon assigned errors of law. Rule 334, Rules of Civil Procedure; Wunschel v. McKinney, 251 Iowa

140

881, 103 N.W.2d 81; Roth v. Headlee, 238 Iowa 1340, 29 N.W.2d 923; In re Estate of Gollobit, 231 Iowa 1074, 3 N.W.2d 191.

It was for the trial court to determine the credibility of witnesses and the weight of the evidence. Harlan Production Credit Assn. v. Schroeder Elev. Co., 253 Iowa 345, 112 N.W.2d 320; Roth v. Headlee, supra; In re Estate of Martens, 226 Iowa 162, 283 N.W. 885; Murphy v. Callan, 199 Iowa 216, 199 N.W. 981.

The trial court found plaintiff had negligently failed to perform an agreement to obtain and keep in force credit life insurance on the life of Steven V. Carter to insure payment of $2250 on the note in suit, resulting in damages to the estate of $2250. The court did not fix liability on the bank for failure to give notice to Carter of its failure to obtain credit life insurance. The trial court did not hold the erroneous statements made after the note had been executed constituted actionable negligence.

Beginning in 1952 plaintiff-bank carried a creditors group life insurance policy with the Bankers Security Life Insurance Society of New York. The group insured consisted of debtors of the bank, one of whom was Steven V. Carter, for some time prior to March 1, 1958. On that date, in addition to other loans owing the bank, Carter executed a $4000 note to the bank, secured by a real-estate mortgage, payable in 48 monthly installments. The bank issued to the insurance company a certificate for Carter's life insurance covering said obligation. On November 26, 1958, Carter executed another note to the bank of $3725 payable May 26, 1959, which was a renewal of several obligations owed by him. In March 1959 Carter had three other loans at the bank all of which totaled $13,354.49. Alice Akes, assistant vice president of the bank prior to March 1959, had remitted premiums to the life insurance society covering each of said five loans and in March 1959 discovered the policy permitted a coverage of only $5000 to any individual debtor.

On March 18 Miss Akes wrote the insurance society admitting her mistake, asking the balance of $2750, owing on the note dated March 1, 1958, be insured and that $2250 of the $3725 note be insured and requested a return of the premiums paid on insurance above the $5000 maximum.

On March 10, 1959, Miss Akes wrote Carter at Bethesda, Maryland, as follows:

"I discover I goofed! Your loans were the first ones I had insured that totaled over $5000 and now I learn the company only accepts loans for insurance up to $5000 on one individual. I am going to try to place another $5000 with another company, but in any event, I will only be able to get $10,000 insured, if that much. Of course, I have charged you premiums for the whole works, so you will have money coming back on what we cannot insure.

"I will advise you as soon as I have this straightened out. Sorry to cause you this inconvenience. Guess I only learn the hard way."

On April 1, 1959, Carter wrote Miss Akes: "I'm hoping that you'll be able to get the whole $10,000 covered, because, as you know, that's the only way I can get life insurance at this time, outside of the $30,000 that I've been able to keep up during the years."

On April 21, 1959, Miss Akes wrote Carter as follows:

"Dear Steve: I am enclosing check of $67.45 which is the return premium on the $8,354.49 credit life insurance which the company would not issue since they would accept only the $5,000.00 limit.

"This cancellation still leaves the real-estate note balance of $2750.00 insured and $2250.00 of the $3725.00 note insured.

"Steve, I am afraid the other company for which we have sometimes written cannot take an additional $5,000.00 insurance."

On May 8, 1959, Miss Akes mailed to Carter a six-month renewal note for the $3725 obligation due May 26 and requested him to sign it together with his wife and remit the interest due to May 26, all of which Carter did within a few days.

In a letter to Mrs. Carter dated June 16, 1959, Miss Akes among other things wrote: "The total amount of the refund check to him was $67.45, which was the premium for all over $5000 of coverage." During the summer of 1959, several letters

were exchanged between the bank and Mr. Carter about his various loans but no mention was ever made of any change of insurance coverage.

In October 1959 at his request Carter's secretary called at the bank and requested information about his several obligations. Miss Akes furnished her a written statement showing a balance of $2750 on the real-estate loan and $2250 of the $3725 note as insured. The balance of $1475 and two other obligations were listed as uninsured. This information was immediately forwarded to Mr. Carter.

Mr. Carter had served as an Iowa congressman during 1959 until his death on November 4, 1959, and had not returned to Iowa during that year. Upon inquiry by Mrs. Carter, Miss Akes on November 7 gave her a memorandum showing the balance of $2750 owing on the real-estate loan and also $2250 of the $3725 note as being insured and $1475 as uninsured. At that time Miss Akes said, "Of course, Mr. Carter has $5000 Credit Life Insurance and we will make application for it."

On November 30, Miss Akes wrote Mrs. Carter, "We have applied for the insurance company payment and will let you know when we hear from them." On December 7, Miss Akes informed Mrs. Carter they did not have the $2250 of credit life insurance. The only explanation given was a letter to Mrs. Carter dated January 27, 1960, from Mr. Long, the bank president, stating: "In reply to your recent letter, we did not place Credit Insurance on the note which was made as a renewal effective May 26, 1959."

We hold there is substantial evidence to sustain the decision of the trial court on the facts.

Plaintiff argues defendant failed to prove any damage due to her failure to establish Carter could have obtained credit insurance from some other source. The three cases from other jurisdictions cited for this proposition were tort actions against an insurance company for negligent delay in issuing a policy. They are not authority on the question of damages for breach of such an agreement as was found by the trial court. No burden rested on defendant to prove some other bank would have made such an agreement. Under the general rule the measure of dam-

ages for breach of an agreement is the amount which will compensate the injured person for the loss which a fulfillment of the contract would have prevented or which the breach of it has entailed. The injured person is entitled to be placed, so far as this can be done by money, in the same position he would have occupied if the contract had been performed. 25 C. J. S., Damages, section 74, page 563; 15 Am. Jur., Damages, section 43, page 442; Bremhorst v. Phillips Coal Co., 202 Iowa 1251, 1255, 211 N.W. 898, 902.

In view of the record, the question of damages in this case will be treated and considered as if a policy in the usual form had been obtained by the bank. The measure of defendant's recovery is the amount recoverable had a policy been actually obtained. American Legion v. Eagle Star & British Dominions Ins. Co., 212 Iowa 1371, 238 N.W. 458; House v. Security Fire Ins. Co., 145 Iowa 462, 121 N.W. 509; Barre v. Council Bluffs Ins. Co., 76 Iowa 609, 41 N.W. 373; Annotation, 29 A. L. R.2d 171, 203.

In Barre v. The Council Bluffs Ins. Co., 76 Iowa 609, 610, 611, 41 N.W. 373, 374, we said:

"While the action is not upon the policy of insurance, it cannot be doubted that defendant's liability must be determined by the terms and conditions of the policy, which also must determine the plaintiff's measure of damages in case he recovers. The action is on an agreement to issue a policy. Now, it is plain that plaintiff's damages are just what he would have recovered if the policy had been issued and the suit brought thereon."

The trial court applied the proper measure of damages. This cause is—Affirmed.

All JUSTICES concur.