IRENE E. ROBICHAUD *vs.* ATHOL CREDIT UNION.

Worcester.    March 6, 1967. — April 5, 1967.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

*Contract,* What constitutes, To procure insurance.  *Deceit.   Agency,* Scope
    of authority or employment.  *Damages,* For deceit.  *Corporation,* Ul-
    tra vires.  *Bank and Banking.*

In a suit in equity by a widow for the cancellation of a promissory note,
    given by her and her husband for a loan from the defendant credit
    union, by reason of its alleged failure to carry out a promise to the
    borrowers to procure insurance on the husband's life for payment of
    the amount due on the loan at his death, evidence did not warrant a
    finding that the defendant entered into a contract with the borrowers to
    make an insured loan or to procure insurance on the husband's life.
    [354]
It was within the apparent authority of a clerk at a counter in the office
    of a credit union to tell a borrower what the items in the loan book
    covered.   [354–355]
In a suit in equity by a widow for the cancellation of a promissory note
    and the discharge of a mortgage given by her and her husband to the
    defendant credit union for a loan, a final decree providing the relief
    prayed for by the plaintiff was proper where it appeared that the
    borrowers' loan book and the defendant's ledger card each reflected a
    premium which the borrowers paid monthly in the belief that it was for
    insurance on the husband's life for payment of the amount due on the
    loan at his death, that a clerk at a counter in the defendant's office
    looked up insurance coverage in its files and told the plaintiff "it's in
    black and white . . . You're insured," that the loan had been repre-
    sented as insured by the defendant with the intent that the borrowers
    rely on the representation, that they did reasonably rely thereon, that
    in fact there was no such insurance, and that the plaintiff was damaged
    to the extent of what she would have had if the misrepresentation had
    been true and so had a claim against the defendant in an amount equal
    to and to be offset against the defendant's claim on the note.   [354–356]
Even if it would have been ultra vires for a credit union to furnish group
    insurance on the life of a borrower to pay the amount due at his death
    on a loan repayable over a period exceeding the ten year period per-
    mitted by G. L. c. 175, § 133, ultra vires was not a defence to a suit in
    equity against the credit union for relief based on a representation by
    the defendant that the loan was insured when in fact it was not.   [355]

BILL IN EQUITY filed in the Superior Court on Febru-
ary 26, 1963.

Robichaud v. Athol Credit Union.

The suit was heard by *Meagher, J.*

The case was submitted on briefs.

*Eugene O. Turcotte* for the defendant.

*Joseph D. Ward & Edward P. Bird* for the plaintiff.

WHITTEMORE, J.  The plaintiff's bill in equity sought cancellation of a note and discharge of a mortgage dated March 31, 1962, written for a fifteen year term in the amount of $5,000.  The alleged basis for relief was that, in connection with negotiating the loan to the plaintiff and her deceased husband, Ernest J. Robichaud, the defendant had undertaken to make arrangements for insurance to cover payment of the loan in the event of Robichaud's death and had not done so, with the result that the plaintiff had a claim offsetting the amount due under the note.  The. defendant's answer included a counterclaim under the note and mortgage.  The evidence is reported.

The judge in the Superior Court found, on subsidiary findings, that the defendant entered into a contract to procure the insurance on the life of Robichaud and that the plaintiff and her husband had paid the premiums but the defendant had not procured the insurance.  He ruled that the note and mortgage should be cancelled and discharged.  The final decree so provided.  The defendant contends that there is no evidence of such a contract between the defendant and either the plaintiff or her husband.

The evidence showed, in accordance with findings of the judge, an original ten year loan for $2,000 dated November 15, 1961, covered by insurance on Robichaud's life.  Charges to cover the cost of the insurance were included in the statement of monthly payments and were paid.  The fifteen year, $5,000 loan, to supersede the ten year loan, was negotiated in March, 1962.  At the date of Robichaud's death in July, 1962, $4,000 had been advanced on the loan.

It was shown that the defendant had a group insurance policy issued under G. L. c. 175, § 133, permitting the insurer to cover "(c) a group of [not less than one hundred] persons who at any time are debtors of a bank . . . for a loan . . . or any balance thereof, in instalments over a

period of not more than ten years . . . for an amount not exceeding his individual indebtedness . . . and not exceeding ten thousand dollars . . . provided . . . that no such debtor shall be insured in such a group for a period of more than ten years on account of a debt arising out of said loan.''

Robert Linehan, assistant treasurer of the defendant, testified that in March, 1962, he discussed with Robichaud the increased loan. He pointed out to Robichaud, with reference to the application form, that if the loan was to be written for ten years he could have insurance but if it was to be for a longer period ''we could not cover it with insurance.'' In a day or two Robichaud told Linehan that the decision had been made to have the fifteen year loan. The papers to set up the loan would have been drawn by the treasurer, his father, Joseph R. Linehan. Q. ''And if this payment book says that it was set up for $2.75 [monthly premium] for insurance, then he would have done it?'' A. ''If it had been set up that way, he would have.'' The first payment by the Robichauds was on April 12, 1962, as shown by the loan book. That payment was for $32.72 and included $2.75 credited in the book to insurance. The bank collected like premiums in May, June and July.

Joseph R. Linehan testified that the bank used for the new loan the same loan book that had been used for the $2,000 loan. Looking at the book, he said, ''[W]hen the loan is put through, we collect the first premium for that month. And the loan not being insured, that premium was not collected [on March 31, 1962, when the loan was made out].'' He testified that the $2.75 premiums were collected through error, ''apparently [by] one of the clerks.''

The plaintiff testified that when she and her husband went to the bank in March, 1962, to sign the prepared papers on the new loan and met with Joseph R. Linehan, there was no talk of insurance that she remembered. Thereafter on one occasion when making payments at the defendant's office she asked the girl who took her money to explain what every column in the book was. The girl told

Robichaud *v.* Athol Credit Union.

her "the $2.75 was my insurance." The plaintiff said, "I want you to make sure we have insurance because of the work he [Robichaud] has. . . . I don't want to be $5,000 in the hole if something happens." The girl "went to the file, . . . looked it up" and said, "Oh yes, it's in black and white . . . You're insured." Robichaud was in the roofing business.

Mrs. Robichaud also testified that about a month before her husband was killed, and following his brother's fall from a roof and consequent death, in the course of discussing that casualty, Robichaud said, "If anything happens to me, Irene, I know you will have the place as yours, and I know you will have a place to raise the children without worrying about paying; just the taxes, that's all."

Mrs. Robichaud and Robert Linehan agreed in their testimony that, shortly after Robichaud's death, she talked with Robert and that, after having looked at the ledger card, he told her that the loan was insured. The evidence tended to show also that a few days later the elder Linehan called, bringing the folder in relation to the loan and told Mrs. Robichaud, "You had no insurance . . . we made a mistake." It was agreed that Mrs. Robichaud's testimony as to her two talks at the bank would be corroborated by the testimony of two witnesses, one having heard the talk with the girl at the counter and the other having been present at the talk with Robert Linehan.

The judge, of course, could disbelieve the testimony that Robert Linehan had told Robichaud that the fifteen year loan could not be insured. There is, however, no evidence that the defendant undertook to make an insured loan or to procure insurance on Robichaud's life, and the finding to that effect cannot stand.

The evidence does, however, support the final decree. There is no dispute that the loan book and the statement of the girl at the counter represented to the borrowers that payments were due for insurance premiums and that there was insurance. We rule that it was within the apparent authority of the girl at the counter to make statements as

to what the items in the loan book covered. It does not appear who put the items in the book, but the book spoke for the bank.[1] The evidence shows that there were entries not only in the book but also on the bank's ledger card. The statements of the treasurer and assistant treasurer after the death of Robichaud tended to confirm that the loan had been represented to the Robichauds as insured. The representations were of a fact susceptible of actual knowledge and proof of intent to deceive is not required. *Pietrazak* v. *McDermott,* 341 Mass. 107, 110, and cases cited. The representations were intended to be relied on by the Robichauds in making the payment for the insurance premiums claimed due and in going forward with their obligations under the contract. The evidence shows that the Robichauds did reasonably rely on the existence of insurance. We think it unnecessary that there be affirmative testimony that, except for the representation, they would have sought to reduce the term of the loan to ten years so as to have the benefit of the bank's group policy, or would have sought other insurance. See *Rice* v. *Price,* 340 Mass. 502, 507–508; *Baglio* v. *New York Cent. R.R.* 344 Mass. 14, 19–20; *McLearn* v. *Hill,* 276 Mass. 519, 524–525 (estoppel); Prosser, Torts, 3d ed. § 102. The plaintiff was damaged, and may recover what she would have had if the representation had been true. *Rice* v. *Price, supra,* 507.

Ultra vires, an affirmative defence, *Nowell* v. *Equitable Trust Co.* 249 Mass. 585, 595–596, has not been pleaded. But it was not ultra vires the defendant to furnish insurance in connection with loans. Even if furnishing insurance would have been beyond the defendant's power, this would not have been a defence. *McCarthy* v. *Brockton Natl. Bank,* 314 Mass. 318, 324–325.

---

[1] Conceivably, the error related to the use of the same loan book, with provision therein for the premium payments on the $2,000 loan of $1.10 per month. The judge found that a new book was issued. Joseph R. Linehan at first so testified, but when shown the book used for the $5,000 loan corrected himself saying, "We used the same book. I'm sorry." The evidence does not show when and in what circumstances the entries of $2.75 per month for supposed premium on the new loan were made.

The final decree is to be modified (a) to delete the finding of a contract; (b) to provide that the plaintiff's claim for damages based on misrepresentations of the defendant is equal to and is offset against the defendant's counterclaim under the note and mortgage and that the note and mortgage are paid, cancelled, and discharged; and (c) to be consistent with the provisions of the foregoing clause (b). As so modified, it is affirmed. The plaintiff shall have costs of appeal.

*So ordered.*