FREQUENCY ELECTRONICS, INC., Plaintiff,

v.

NATIONAL RADIO COMPANY, INC. and Louis Lerner, Defendants.

No. 72 Civ. 412.

United States District Court, S. D. New York.

Dec. 9, 1975.

Pryor, Cashman & Sherman, by Sanford M. Goldman, New York City, for plaintiff.

Rich, May & Bilodeau, by Edwin J. Carr, Boston, Mass., for defendants.

## FINDINGS AND CONCLUSIONS

BRIEANT, District Judge.

This action was originally commenced in the Supreme Court of the State of New York and was removed to this Court pursuant to 28 U.S.C. § 1446. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

The plaintiff has sought a declaratory judgment that a promissory note made by plaintiff Frequency Electronics, Inc. ("Fre-quency") payable to National Radio Company, Inc. ("National") is void. In addition, plaintiff has demanded damages for an alleged breach of warranty and fraudulent misrepresentation in the assignment of a patent.

National was adjudicated a bankrupt on September 7, 1973 and is no longer a party to this action.

A non-jury trial commenced on June 9, 1975 and what follows constitutes this Court's Findings of Fact and Conclusions of Law as required by Rule 52, F.R.Civ.P.

This action stems from a Purchase and Sale Agreement which was executed by Frequency and National on February 3, 1969. By ¶ 16 thereof the parties provided that ". . . this agreement shall be governed in all respects by the laws of the State of Massachusetts." By that agreement National sold to Frequency its product line known as the "Atomichron"[1], and all assets (inventory, machinery and equipment) related to that line. As part of that transaction National assigned 19 patents which it owned to Frequency. One of these patents was for a "molecular beam apparatus" developed by Dr. Jerrold Zacharias for use in an atomic clock (the "Zacharias patent").

Frequency paid a total purchase price of $733,000.00, plus a 5% royalty for 10 years and an equal division of the proceeds with National of any net recovery from any patent infringement actions brought against third parties by Frequency under the assigned patents. As part of the price, Frequency gave National two promissory notes, one of which, in the face amount of $325,-000.00 has not been paid in full. This note was payable in ten equal annual installments commencing on February 3, 1970. On June 27, 1969, by agreement of the parties, a credit of $23,000.00 was given to the plaintiff by reducing the face amount of the note to $302,000.00. Some payments

---

1. The "Atomichron" was the registered trademark and tradename under which National manufactured and sold a device known generally as the atomic clock. The atomic clock is the most accurate commercially available means for keeping time. Both National and the Hewlett-Packard Corporation of Palo Alto, California were in the business of manufacturing atomic clocks at the time of the Purchase and Sale Agreement in February 1969.

have been made, and the balance remaining at the commencement of the action was $260,000.00. The other note in the principal amount of $200,000.00 came due on August 3, 1970, and was paid at that time.

In the Purchase and Sale Agreement the total consideration of $733,000.00 was allocated as follows: inventory, $250,000.00; machines and equipment, $158,000.00; data and patents, $325,000.00.

The two Frequency notes were subsequently acquired by defendant Lerner, the Chairman of the Board, Treasurer and principal shareholder of National. In November 1969, the Middlesex Bank, N.A. in Massachusetts loaned National $300,000.00. As part of the security for this loan, National pledged the two Frequency notes and turned them over to the Bank. In the Spring of 1970, the principal balance due Middlesex from National was $270,000.00. On April 9, 1970, National assigned, with the permission of the Bank, both notes to the defendant Lerner, for a purchase price of $323,000.00.

Plaintiff asserts two basic claims: First, that the note is void for lack of consideration and breach of warranty on the ground that the Zacharias patent is invalid, that National specifically warranted it as valid in the Agreement, and that it was so central to the transaction that its invalidity constitutes a total failure of consideration; and second that the plaintiff is entitled to damages because National's management together with Lerner fraudulently misrepresented the patent's validity.

Defendant Lerner has denied any fraud on his part, and in his counterclaim he demands payment of the $325,000.00 note as a holder in due course, i. e., as one who is entitled to payment free of any "personal defenses," such as lack of consideration, breach of warranty, or fraud in the inducement, that might be available against National. *See* Ann.Laws of Mass., ch. 106, § 3–305 (1963). In the alternative defendant claims that he is an assignee for value

without notice under general principles of contract law.

▉▉▉ For the purposes of this case, the parties have stipulated that the Zacharias patent is invalid by reason of 35 U.S.C. § 102(b) which provides that a person is entitled to a patent unless:

". . . the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, . . . ."

On October 3, 1956, National held a press conference at the Overseas Press Club in New York to demonstrate that its Atomichron, which incorporated the Zacharias patent, was available for commercial and military use. Dr. Zacharias did not apply for a patent until October 29, 1957.[2] Thus the atomic clock was a completed and operational device at the time of the press conference. National had begun a campaign to market the Atomichron and is thus chargeable with knowledge of the patent's invalidity. As noted by Judge MacMahon in his decision granting a preliminary injunction in this case, reported at 342 F.Supp. 1159, 1161, n. 3, a note given in payment for an invalid patent is void for failure of consideration under Massachusetts law. *Nash v. Lull*, 102 Mass. 60 (1869).

▉▉▉ National also breached the warranty of good title which it made in ¶ 5 of the Purchase and Sale Agreement. By that paragraph, National warranted that it had full legal title to the items conveyed and that it had the right and authority to convey them. The law is clear that a party can have no title and therefore cannot convey any title to a void patent, and that there can be neither legal nor equitable ownership of such a patent. *Kennedy v. Hazelton*, 128 U.S. 667, 9 S.Ct. 202, 32 L.Ed. 576 (1888); *Koehring Co. v. National Automatic Tool Co.*, 257 F.Supp. 282, 289 (D.Ind. 1966), *aff'd*, 385 F.2d 414 (7th Cir. 1967); *Tracerlab, Inc. v. Industrial Nucleonics Corp.*, 204 F.Supp. 101, 104 (D.Mass.1962),

---

**2.** Indeed National had sold and delivered one of the Atomichrons to the Naval Research Laboratory in Washington, D.C., more than one year prior to the filing of the patent application.

*rev'd on other grounds*, 313 F.2d 97 (1st Cir. 1963).

■ Frequency thus has two valid defenses against National, namely failure of consideration and breach of warranty. Whether these defenses are available against Lerner depends upon whether Lerner is a holder in due course of the promissory note. Section 3–307(3) of the Uniform Commercial Code, Ann.Laws of Mass., ch. 106, § 3–307(3) (1963) requires that once a defense to a note has been shown, the party claiming to be a holder in due course has the burden of proving that he is in all respects a holder in due course. Thus Lerner must prove that he took the instrument for value, in good faith and without notice of any defense against the note on the part of any person. Ann.Laws of Mass., ch. 106, § 3–303 (1963).

Lerner has not sustained his burden of showing that he had no notice of the defense of failure of consideration at the time the note was negotiated to him in April, 1970. Section 1–201(25) of the Uniform Commercial Code, Ann.Laws of Mass., ch. 106, § 1–201(25) (1963), provides that a person has notice of a fact when:

". . . (a) he has actual knowledge of it; or (b) he has received a notice or notification of it; or (c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists."

■ The evidence shows, and I find, that Lerner was the dominant person in the affairs of National. He owned approximately 35% of the outstanding shares of National and was Chairman of the Board and of the Executive Committee. He participated fully in National's affairs and was knowledgeable about the company's activities in developing and promoting the Atomichron. He was present at the press conference at the Overseas Press Club on October 3, 1956, perhaps the key event which resulted in the Zacharias patent being invalid. He had knowledge of both the circumstances surrounding the origins of the Zacharias patent and National's activities related to it, sufficient to put upon him a duty to inquire further. He is thus chargeable with knowledge of all the facts which such an inquiry would have revealed. One who takes a negotiable instrument knowing that it was issued without consideration takes with notice of a defense of a party to the instrument and cannot be a holder in due course. Therefore under § 3–306(c) of the Uniform Commercial Code, Ann.Laws of Mass., ch. 106, § 3–306(c) (1963), Lerner takes the instrument subject to the defense of failure of consideration and cannot enforce the note to the extent that Frequency received nothing in exchange for it.

The evidence cited above also negates Lerner's claim that he is an assignee for value without notice.

■ Frequency also claims that it was defrauded by National and Lerner. At common law, to recover in an action for fraud, plaintiff must prove the existence of five indispensable elements: (1) a representation of a material fact; (2) the falsity of that representation; (3) an intent to deceive on the part of the defendant, or at least a state of mind so reckless as to be the equivalent of such intent (scienter); (4) a justifiable reliance upon the misrepresentation by the party deceived which induces him to act thereon; and (5) injury to that party as a result of his reliance on the misrepresentation. See W. Prosser, Law of Torts, §§ 100–105 (3d ed. 1964); *Norton v. Curtiss*, 433 F.2d 779, 793, 57 C.C.P.A. 1384 (1970). In certain respects the Massachusetts law of fraud differs from the common law. These differences will be noted below.

■ The evidence shows, and I find, that Martin Bloch, the President of Frequency had several meetings with Lerner at the latter's offices in New York. During these meetings, Lerner spoke of the very strong patent position that National held on the atomic frequency device (Tr. p. 28). Bloch also testified and the Court finds, that either Lerner or Mr. Oddi in Lerner's presence handed Bloch a memorandum (Plaintiff's Ex. 46) prepared by National's patent attorney which stated that the Zacharias patent was valid and that Hewlett-Packard

was infringing it. Lerner was unable to deny these allegations; he testified that he might have discussed patents with Bloch and that the discussion ". . . may have referred to the Zacharias patent which I knew existed . . ." (Tr. pp. 266–67).

From all of the above evidence, the plaintiff has shown that Lerner and other members of National's management made statements concerning the validity of the Zacharias patent. This Court will also draw the reasonable inference from the entire testimony, and particularly Paragraph 8 of the Purchase and Sale Agreement (Plaintiff's Ex. 1) that Lerner and National's management made the statement that there was an outstanding claim against Hewlett-Packard for infringing the Zacharias patent. By paragraph 8 of the contract, captioned *NCRI Causes of Action*, National assigned any patent infringement causes of action, provided that Frequency assumed all the risks of litigation and agreed to share equally the net proceeds of any recovery with National. This clause is obviously more than just boiler-plate and is some evidence that Frequency believed and understood at the time of the agreement that there was an outstanding claim for infringement of the Zacharias patent against Hewlett-Packard. The only discussion which Frequency ever had with National on the topic of possible patent infringement actions against third-parties concerned infringement of the Zacharias patent by the Hewlett-Packard atomic clock. Frequency's belief and understanding that there was such a pending infringement claim arose from statements made and information supplied by Lerner and other members of National's management.

As for the materiality of these representations concerning the Zacharias patent, there was undisputed testimony that the invention covered by the Zacharias patent is absolutely essential to the successful commercial exploitation of the atomic clock and that it has been used in every version of the clock ever marketed. For Frequency the Zacharias patent and the existence of a claim against Hewlett-Packard were key elements in the whole transaction because the evidence shows that its management did not think that without proper patent protection, it could compete successfully with Hewlett-Packard, a company many times the size of Frequency.

As for the second element it is now clear that the representations made and the information supplied by Lerner and National's management to Frequency concerning both the validity of the Zacharias patent and the existence of a cause of action for patent infringement against Hewlett-Packard were false. Thus the second element requiring falsity in the representations is satisfied.

To satisfy the third element, Massachusetts law does not require proof of an outright fraudulent intent. If a statement of fact which is susceptible of actual knowledge is made as of one's own knowledge and is false, it may be the basis of an action for fraud without proof of an actual intention to deceive. *Pietrazak v. McDermott,* 341 Mass. 107, 167 N.E.2d 166, 168 (Sup.Jud. Ct.1960); *Robichaud v. Athol Credit Union,* 352 Mass. 351, 225 N.E.2d 347, 350 (Sup.Jud. Ct.1967). Lerner and National's other personnel made statements of fact concerning the patent's validity and the existence of a cause of action for patent infringement as of their own knowledge. In view of Mr. Lerner's position with National as Chairman of the Board and principal shareholder, his personal presence at the 1956 press conference, and his knowledge of the underlying facts relating to the development of the Zacharias patent, the patent's importance, and Hewlett-Packard's alleged infringement, this Court will draw the inference that Lerner was in a position to find out the truth about the Zacharias patent and the supposed cause of action for patent infringement. Under Massachusetts law, that is all that is necessary to satisfy the scienter requirement.

The evidence also establishes that Frequency relied upon these misrepresentations. Mr. Bloch testified, and I find, that Frequency's ability to compete successfully with Hewlett-Packard in the production of

atomic clocks depended in large part upon the strong patent position which it thought it was acquiring from National. Mr. Bloch also testified, and I find, that he was worried about the patent situation and that he relied on the Memorandum of Patent Counsel (Plaintiff's Ex. 46) in recommending to Frequency's Board of Directors that it approve the purchase of the Atomichron product line. (Tr. pp. 53–54).

■ Whether this reliance was justifiable is of course a separate problem. Frequency did not make its own investigation of the validity of the Zacharias patent which it now claims was so central to the whole transaction. The question naturally presents itself as to why Frequency did not take steps to obtain an independent evaluation of what it now contends was a crucial part of the deal. After all, the parties were engaged in an arms length negotiation, and Frequency had the advice of competent counsel. Clearly, Frequency could have demanded that its own counsel examine the patent position which it was acquiring. Fortunately for plaintiff, the law in Massachusetts seems to be that the recipient of a misrepresentation in a business transaction is justified in relying on its truth although he might have ascertained the falsity of the representation had he made an investigation on his own. *Yorke v. Taylor*, 332 Mass. 368, 124 N.E.2d 912, 916 (Sup.Jud.Ct.1955).

■ Finally we come to the question of damages. The evidence shows, and I find, that Frequency was damaged by its reliance on the material misrepresentations made by National's management and Lerner. The law in Massachusetts is that the plaintiff is entitled to recover the difference between the value of what he has actually received and the value of what he would have received if the fraudulent misrepresentations had been true. *Rice v. Price*, 340 Mass. 502, 164 N.E.2d 891, 894 (Sup.Jud.Ct.1960). If the fraudulent representations had been true, the plaintiff would have acquired a strong patent position in the atomic clock market. According to the parties own allocation of the consideration in Paragraph 3(c) of the Purchase

and Sale Agreement, data and patents together were worth $325,000.00. The value of what plaintiff actually did receive is unclear. While Frequency apparently still owns the 18 other patents and the data assigned by National, it claims that the Zacharias patent was the key to the transaction and that without it all the other patents and data were worthless. The defendant of course disputes this but has not provided much evidence in support of its contention that the Zacharias patent was not crucial.

In sum, the plaintiff has not provided the Court with any basis for allocating the $325,000.00 total consideration for data and patents among the Zacharias patent, the 18 other patents, and the data transferred. Fortunately, the Court is not without a remedy in this situation. It is the purpose of a trial to dispose of all of the disputed issues and to reach a just resolution of the action. The trial is now over, and the Court will resolve all disputed issues on the present record.

On its fraud claim, the plaintiff is entitled to a partial rescission of the transaction, since the misrepresentations related only to one element of the entire transaction. Thus the outstanding debt of $260,000.00 should be cancelled and plaintiff should recover the sum of $42,000.00, the amount which it has paid on the note, [$65,000.00 less the $23,000.00 credit] on condition that it assign to Lerner the 19 patents and all data relating to the Atomichron. This result restores to each party the consideration which it parted with in the original deal. Thus the plaintiff will receive back the cash and the note which it issued as payment for the data and patents, while Lerner as successor to National will acquire the patents and all data relating to the Atomichron which was the agreed consideration for the note. Treating the Zacharias patent as a nullity, the plaintiff would ordinarily not be required to assign it to Lerner. However, since the stipulation of invalidity is limited to this action only, it shall also be assigned.

Accordingly, the plaintiff is entitled to a judgment in the amount of $42,000.00, plus interest at 6% since January 24, 1972, and costs. The judgment shall state that the plaintiff's outstanding note shall be cancelled and that said note shall be so marked and returned to the plaintiff provided that upon payment, Frequency shall assign to Lerner, free and clear of all claims of third parties, the 19 patents and all data relating to the Atomichron, which items are set forth in more detail in the Purchase and Sale Agreement of February 3, 1969.

Settle Judgment on notice.