**Richmond**

NATIONAL AIRLINES, INC.

V.

KEVIN P. AND DIANA SHEA

June 18, 1982.

Record No. 800307.

Present: All the Justices.

James C. Howell (*Willcox, Savage, Lawrence, Dickson and Spindle, P.C.; Kirkland & Ellis [D.C.]*, on briefs), for appellant.
Warren C. McNamara, Jr. (*McNamara, Shea and Griffin*, on brief), for appellees.

PER CURIAM.

This is an appeal from the circuit court's decision refusing to set aside a default judgment pursuant to Code § 8.01-428.* Kevin

---

* § 8.01-428.-A. *Default judgments and decrees pro confesso; summary procedure.*- Upon motion of the judgment debtor and after reasonable notice to the opposite party, his attorney of record or other agent, the court may set aside a judgment by default or a decree pro confesso upon the following grounds: (i) fraud on the court, (ii) a void judgment, (iii) on proof of an accord and satisfaction. Such motion on the ground of fraud on the court shall be made within two years from the date of the judgment or decree.

* * *

C. *Other judgments or proceedings.* - This section does not limit the power of the court to entertain at any time an independent action to relieve a party from any judgment or pro-

and Diana Shea filed a motion for judgment in the General District Court of the City of Hampton claiming $5,000 damages against National Airlines, Inc. (National). The motion stated no grounds or theory of recovery, and was returnable to July 12, 1979.

Counsel for plaintiffs was Warren H. McNamara, Jr., a law partner of Mr. Shea. When the motion was served on National, it was brought to the attention of Thomas W. Kirby, a member of the District of Columbia Bar, whose firm represented National. He telephoned Mr. McNamara on July 5, 1979, to inquire as to the nature of the Sheas' claim. Mr. McNamara responded that the Sheas were seeking to recover for a suit bag lost during a flight to Norfolk from the Bahamas. Mr. McNamara agreed to furnish the details of the Sheas' claim, and to continue the case to July 26, 1979. He sent the requested information to Mr. Kirby by letter dated July 11, which did not arrive until July 17. He also arranged a continuance to July 26.

On July 18, Mr. Kirby, having investigated the case, again telephoned Mr. McNamara, and reported that National wished to contest the claim on the ground that the Sheas had missed their National flight in Miami, and had returned to Norfolk by other carriers. He pointed out that the Warsaw Convention, which controls international flights, limits liability and restricts responsibility to those carriers which actually provide transportation. Mr. McNamara agreed to discuss the matter with his clients. He asked Mr. Kirby to write, confirming his information and enclosing a copy of the Warsaw Convention. Mr. Kirby testified that he then asked Mr. McNamara for a further extension of time, pointing out that the trial date was again close at hand, and that Mr. McNamara agreed to another continuance in order that he might determine whether the Sheas wished to proceed against National or sue the other carriers. Mr. Kirby testified that he understood that if the Sheas did wish to proceed, he would be given two weeks to contact Virginia counsel who could defend National.

On July 20, Mr. Kirby wrote Mr. McNamara, pointing out National's defenses and referring to the telephone conversation of July 18. He concluded with this paragraph:

ceeding, or to grant relief to a defendant not served with process as provided in § 8.01-322, or to set aside a judgment or decree for fraud upon the court.

I hope that this letter and the Warsaw Convention provide you with sufficient grounds to drop your suit against National. If so, please let me know. If not, I understand that you will grant me a further two-week extension in which to respond to your Motion for Judgment.

Mr. McNamara also testified to the conversation of July 18, but denied that any further continuance was discussed. He testified that he received the letter of July 20 before the trial date, and knew that Mr. Kirby believed that a further continuance would be granted. However, he considered the letter to be "basically self-serving" and thought he had no obligation to respond. He said, "I get things in the mail selling shoes; does that mean I'm going to send them a check if I don't order any?" He had no further telephone conversations with Mr. Kirby, and never again wrote to him.

On July 26, 1979, Mr. McNamara and his partner, Mr. Shea, "walked across the street" to the general district court to seek a default judgment against National. The court inquired as to the position of the defendant. Mr. McNamara testified: "[W]hen he [Judge Wilson] asked me about it and I said, well, I have talked with the lawyer, that no one was there, that I continued it once voluntarily. No one was there to do anything, you know, so the judge gave us a judgment." Mr. McNamara did not furnish the court with the letter of July 20 or make any mention of Mr. Kirby's evident misunderstanding as to the trial date. He was also silent as to the Warsaw Convention.

The court entered a default judgment against National for $5,000, then the jurisdictional limit of the general district court. Although the claim was for unliquidated damages, it appears that no evidence was taken as to the value of the lost luggage.

Plaintiffs gave no notice to National that they had obtained a default judgment. Rather, they waited until the expiration of the ten day period for appeal, Code § 16.1-106, and the thirty day period for a new trial, Code § 16.1-97, after which they sought execution by levy on National's property at the Norfolk Airport. These tactics were not inadvertent. Mr. Shea testified, "because we had had such bad luck with National all along we were just going to wait, and when we got the time levy on some equipment." National first became aware of the judgment through a telephone

call from a deputy sheriff at the Norfolk Airport on August 30, 1979.

Unaware of these developments, Mr. Kirby testified that he had telephoned Mr. McNamara's office once or twice in early August, but was informed that Mr. McNamara was "not available." On August 9, he wrote to Mr. McNamara as follows:

> In late July we agreed to extend the date on which National must respond to your outstanding Motion for Judgment pending your decision as to whether or not it should be withdrawn. I have not heard from you since, and your secretary was unable to give me a status report when I called.
> I presume that you still have the matter under consideration and will advise me when you reach a decision. If you elect to proceed, we will retain local counsel and make the prompt response to which you are entitled. In the meantime, however, I understand that the case will remain in abeyance. As we discussed, since National did not ever carry the Sheas on their journey home, it has a number of absolute defenses which it does not wish to lose by default.
> Thank you for your continuing courtesy in this matter. I look forward to hearing from you.

Mr. McNamara admitted that he received this letter while the case was still under the control of the general district court, but that he did not call it to the court's attention.

Upon being advised of the levy, National posted a $10,000 forthcoming bond, and moved the general district court to set the judgment aside pursuant to Code § 8.01-428. The court denied the motion on October 4, 1979. National then filed a bill of complaint for an injunction against the enforcement of the default judgment in the Circuit Court of the City of Hampton. The injunction was denied on the ground that the complainant had an adequate remedy at law. National then perfected a timely appeal to the circuit court of the district court's denial of its motion to set aside the judgment under § 8.01-428. At the trial of this appeal, on November 30, 1979, the circuit court heard the testimony of Mr. Kirby, Mr. McNamara, and Mr. Shea. National's motion to set aside the default judgment was denied. This was error.

■ On July 26, 1979, when the district court judge asked Mr. McNamara about the defendant, he was entitled to a full, fair,

and truthful answer. Mr. McNamara, although he may not have actually agreed to a continuance, knew that Mr. Kirby thought that he had. His response was a disingenuous half-truth. He had a duty to be above-board with the court and fair with opposing counsel. Further, Mr. McNamara failed to call the court's attention to the applicability of the Warsaw Convention, which he knew to be adverse to his clients' position.

When National's motion was heard in the circuit court, Mr. McNamara testified as his clients' principal witness. Shea, the client, conducted the direct examination of Mr. McNamara. Then Mr. McNamara left the witness stand, and, in summation, argued his own credibility. This is an ethical matter of primary concern to the Bar, which we do not decide here. However, it becomes relevant to this case because it brings the plaintiff within the rules of estoppel.

We have held that a default judgment obtained by misleading a defendant into thinking a continuance had been agreed upon is fraudulent and should be set aside. *Holland* v. *Trotter*, 63 Va. (22 Gratt.) 136, 141 (1872); *Moore* v. *Lipscombe*, 82 Va. (7 Hans.) 546, 549 (1886). To avoid such a holding here, plaintiffs' counsel took the stand to deny any discussion of the subject of a continuance beyond July 26. We think the plaintiff should have been estopped from relying upon this testimony.

> In general, a person is required to speak only when common honesty or fair dealing demand that he do so, and in order that a party may be estopped by silence, there must be on his part an intent to mislead, or at least a willingness that others should be deceived, together with knowledge or reason to suppose that someone is relying on such silence or inaction and in consequence thereof is acting or is about to act as he would not act otherwise.

*Cantrell* v. *Booher, Administratrix*, 201 Va. 649, 654, 112 S.E.2d 883, 887 (1960). One who has been silent when he should have spoken will not be permitted to speak when he should be silent. *Fitchett* v. *Parsons*, 142 Va. 163, 168, 128 S.E. 457, 458 (1925). These are the rules of the marketplace. Higher standards should prevail in the practice of law. For these reasons, we shall set aside the default judgment pursuant to Code § 8.01-428 on the ground of fraud upon the court. The case will be remanded to the circuit

court with direction to remand the matter to the general district court for trial on the merits.

*Reversed and remanded.*