# CIRCUIT COURT OF THE CITY OF PORTSMOUTH

The Crawford Association

v.

Structural Maintenance
Systems, Inc.

January 8, 2002

Case No. (Law) CL01-605

BY JUDGE DEAN W. SWORD, JR.

This matter is before the court upon a Motion for Judgment filed by The Crawford Association (henceforth "Crawford") against Structural Maintenance Systems, Inc. (henceforth "SMS"), seeking damages, attorney's fees, and costs from an alleged breach of contract (actually an express warranty contained in the contract).

*Facts*

Crawford is a homeowners' association, which manages a condominium located in Portsmouth, Virginia, known as One Crawford Parkway. In 1997, Crawford entered into a contract with SMS to perform various repairs to the condominium. The contract contained certain express warranties in favor of Crawford and *inter alia* made SMS liable for costs, expenses, attorney's fees, and expert witness fees incurred by Crawford as a result of a breach of the warranty.

During the summer of 1998, a dispute arose between the parties as to whether the warranty had been breached relative to the installation of a balcony topping system previously installed by SMS. The parties were unable to resolve the issue initially, and this action was filed on March 30, 2001.

After service of the motion, SMS obtained counsel and it was agreed that various extensions of time to answer the suit could be had while negotiations took place.

On May 29, 2001, representatives of the parties, their respective counsel, and S. J. Leavitt, a professional engineer hired by Crawford, met to discuss the issues and possible settlement. At this meeting, what may be fairly called a partial settlement was reached between the parties. The following day, counsel for SMS, Mr. Test, wrote a letter to Mr. Patrick, counsel for Crawford, memorializing what he believed to be the agreement reached on May 29, 2001. (Defendant's Exhibit B.) Significantly the letter provided "if this is not correct, please contact me immediately in writing." It is agreed that the letter was received by Mr. Patrick and a copy was also received by the representatives of Crawford. No reply, written or otherwise, was sent to Mr. Test.

Again on July 13, 2001, Mr. Test wrote to Mr. Patrick advising that SMS "will be onsite ... on July 30, 2001, to begin work." The July 13 letter alludes to "the understanding reached during our meeting [May 29, 2001] ... and my May 30 letter." It also provides for dismissal of the suit and preparation of a settlement agreement upon completion of the work by SMS in a satisfactory manner. (Defendant's Exhibit C.) It was also received by Mr. Patrick and Crawford's representatives.

It is agreed by both parties that SMS satisfactorily completed the work as contemplated by the May 29 meeting. The sole remaining issue is the liability of SMS for attorney's and expert witness fees incurred by Crawford.

### Settlement Issues

The defendant raises several defenses to the motion filed by the plaintiff. We shall first consider whether or not a settlement was reached at the May 29, 2001, meeting, and, if so, does the May 30 letter authored by Mr. Test set forth terms which would now be binding upon the plaintiff.

(It should also be noted that while counsel has stipulated that the work contemplated was performed by SMS and there is now no pending claim for breach of warranty, the issue of the allocation and/or payment of expert witness fees has never been resolved and is before the court for decision.)

Is the May 30 letter a settlement agreement or is there other credible evidence of a settlement?

Virginia Code §§ 11-1 and 11-2 (generally known as the Statute of Frauds) sets forth the various transactions that require a written agreement or memorandum signed by the applicable parties before it may be enforced in the courts of the Commonwealth. A settlement agreement is not one of the

things that is subject to this statutory rule. Thus, a settlement agreement may be valid and never reduced to writing and signed by the respective parties. *Brown v. Sparks*, 262 Va. 567, 570, 554 S.E.2d 449 (2001).

The testimony offered by all of the witnesses indicated that the various parties reached an agreement concerning the work that needed to be done at the May 29, 2001, meeting. The witnesses differ in their testimony as to whether the issue of attorney's fees was settled. The court therefore finds that while there was a settlement of the construction issues, there is insufficient evidence to find that the parties reached an agreement with respect to the payment of attorney's fees.

The issue does not end here, however. Defendant argues that the May 30 letter estops the plaintiff from its claim.

A search of the reported Virginia cases fails to disclose one that is factually on point with our matter. There are, however, several cases that are helpful in resolving this issue.

A long line of Virginia cases recognizes the equitable concept of estoppel. The recent matter of *Princess Anne Hills v. Susan Constant R. E.*, 243 Va. 53, 59, 413 S.E.2d 599 (1992), sets out the rule:

> The elements necessary to establish equitable estoppel are (1) a representation, (2) reliance, (3) change of position, and (4) detriment. ...

See also *Heath v. Valentine*, 177 Va. 731, 737-38, 15 S.E.2d 98 (1941); *Moyers Coal Corp. v. Whited*, 157 Va. 302, 312, 160 S.E. 43 (1931); and *Thomasson v. Walker*, 168 Va. 247, 256, 190 S.E. 309 (1937).

These cases emphasize the importance "that the representation of concealment relied on ... must have been made with full knowledge of the facts by the parties to be estopped. ..." *Heath, supra*, at p. 738.

This rule was been applied in diverse factual situations:

(1) knowledge by an insurance agent that a buyer and a seller of a car assumed they could transfer the auto insurance when the car was sold estopped the insurance carried from later denying coverage. *Virginia Auto Mutual Ins. Co. v. Brillhart*, 187 Va. 336, 349, 46 S.E.2d 377 (1948);

(2) attorney misleading a defendant into thinking a continuance had been agreed to and then taking a default judgment. *National Airlines v. Shea*, 223 Va. 578, 583-84, 292 S.E.2d 308 (1982);

(3) savings and loan company advising its customer they would have credit life insurance unless the customer was advised "within ten days if the policy was not issued" estopped to deny coverage and held liable for the loss

upon the death of the customer. *Virginia First S. & L. v. Wells*, 224 Va. 691, 695-96, 299 S.E.2d 370 (1983);

(4) failure to advise insurance company of the recovery of a stolen vehicle prior to accepting insurance settlement. *Nationwide Mutual Ins. Co. v. Hargraves*, 242 Va. 88, 92-93, 405 S.E.2d 848 (1991);

(5) party bound by an erroneous representation to a court as to the proper amount of damages (less than what was actually owed). *Fitchett v. Parsons*, 142 Va. 163, 168-69, 128 S.E. 457 (1925).

Several of these cases revolve around actual fraud (*i.e. National Airlines v. Shea* and *Nationwide Mutual Ins. Co. v. Hargraves*) and others around mistakes or negligence (*i.e. Virginia Auto Mutual Ins. Co. v. Brillhart* and *Virginia First S. & L. v. Wells* and *Fitchett v. Parsons*). The result, however, seems to be the same: if you have a duty to act and your failure to do so causes another relying upon your failure to change their position to their detriment, you are estopped from defending on that failure.

Simply stated, "One who has been silent when he should have spoken will not be permitted to speak when he should be silent." *Virginia First S. & L., supra*, at p. 696.

The question then is whether or not the May 30 letter penned by Mr. Test meets the applicable criteria to constitute an equitable estoppel.

The terms of the letter are significant. It begins in the first paragraph: "This letter will memorialize the settlement terms discussed and agreed. ..." The following five paragraphs discuss the work to be done as "warranty repairs."

In the seventh paragraph, it states that "Each party will be responsible for its own legal fees and costs." The paragraph then goes on to discuss the unresolved issue of expert witness fees.

The eighth paragraph discusses an order extending the time to file responsive pleadings and concludes:

> I believe that this accurately sets forth the entirety of the terms of our settlement agreement. If this is not correct, please contact me immediately in writing.

The court also finds significant the fact that the July 13 letter written by Mr. Test contains the following concluding paragraph:

> The remaining matter to discuss will be what contribution my client will make toward the expenses of Mr. Leavitt. ...

(The substance of the letter was a discussion of the start of repairs and the manner in which they were to be performed.)

When we apply the four-prong test noted above, we come to the following conclusions:

(1) There certainly was a clear and unequivocal representation as to the issue of attorney's fees, each side "would be responsible for its own legal fees."

(2) Evidence further indicates apparent reliance when work was undertaken slightly more than eight weeks later. The letter of July 13 also gives credence to the position of the defendant that all matters, save expert witness fees, were assumed by the defendant to be resolved. Testimony given by Mr. Russell, president of SMS, also shows that he made a decision to make the repairs with "a clear understanding that both parties would be responsible for their own legal fees." (T. p. 69.)

(3) Again, the evidence shows that SMS changed its position by making the repairs demanded by Crawford and incurring certain costs.

(4) The actions taken were also to the detriment of SMS in that they incurred the cost associated with the repairs.

Having considered and applied the criteria to our facts, the court can come only to the conclusion that Crawford must be estopped from making a claim for attorney's fees. Crawford and/or its counsel had almost sixty days within which it could and, more importantly, should have advised SMS or its counsel that the issue of attorney's fees had not been resolved. Their failure to do so requires their request for attorney's fees to be denied.

### Expert Fees

Finally, the issue of expert fees has been submitted to the court for decision. The plaintiff has submitted as Exhibit 1 the invoice of Leavitt Associates, Ltd., in the amount of $10,792.00. There is no controversy regarding either the services rendered or the charges for those services.

The court believes that Crawford correctly states it is entitled to be paid for these expenses save some other agreement. Clearly, there is no other agreement and, therefore, the court will assess the entire amount of the bill against SMS.

Counsel shall prepare an order in accord with this opinion. It would also appear to the court that the order should terminate this litigation so that this matter is concluded and the parties be able to pursue appellate remedies should they be so advised.