# CHARLESTON

## FRUIT DISPATCH CO. V. ELLIS.

Submitted September 22, 1914.   Decided October 6, 1914.

1. PRINCIPAL AND AGENT—*Authority of Agent.—Sales.*

    An agent authorized to sell fruit in car load lots on certain pre-scribed conditions only, one of which is that all deliveries shall be made f. o. b. cars at the seaboard, can not bind his principal by contracting with a buyer, who has knowledge of the conditions, to deliver elsewhere. (p. 55).

2. SAME—*Authority of Agent—Notice to Buyers.*

    A purchaser who has received a printed copy of such conditions governing sales, before making his purchase, is chargeable with notice thereof.   His ignorance of the English language is not a legal excuse for his failure to inform himself respecting the contents of the writing.   (p. 55).

Error to Circuit Court, Marshall County.

Assumpsit by the Fruit Dispatch Company against George Ellis, doing business, etc.   Judgment for defendant, and plaintiff brings error.

*Reversed and Remanded.*

*Chas. A. Showacre, Merrick & Smith,* and *Eugene W. Ong,* for plaintiff in error.

*D. B. Evans,* for defendant in error.

WILLIAMS, JUDGE:

This action of assumpsit was brought by the Fruit Dispatch Company against George Ellis to recover $264.68, the price of a car load of bananas alleged to have been purchased by him on the 16th of June, 1910.   There was a judgment for defendant and plaintiff brings error.

Defendant was engaged in buying and selling fruit in the city of Moundsville in the name of the Moundsville Produce Company.   He had been agent and buyer for that company from 1904 to 1907, when he purchased the business, and continued it in the original name, but paid his bills by individual check.   From 1904 to the bringing of this suit he was a cus-

tomer of plaintiff and purchased numerous cars of bananas from it.

Plaintiff contends that the bananas were sold, in this instance, according to the terms of printed instructions entitled "Uniform Conditions Governing Sales," which it furnished to its customers. A booklet containing them and a telegraphic code was furnished to defendant in 1904. He admits receiving it, but denies that he knew its contents, and says he cannot read English. A witness for plaintiff testified that he explained them to him, but defendant denies it. Clauses 1, 11 and 12 of said printed conditions read as follows:

"1. All bananas and fruit are sold by the Dispatch Company delivered f. o. b. freight cars at the seaboard, with the exception of special sales provided for in clause No. 11 hereof. After delivery to the carrier at the seaboard all bananas and fruit are at the sole risk of the purchaser. Every order for or sale of bananas or fruit given or made after the same shall have been shipped at the seaboard, shall relate back to the time of such shipment and shall have the same force and effect in every respect as if given or made prior to such shipment.

"1. Special sales may be made, after arrival of bananas or fruit at the final destination, to purchasers personally inspecting and accepting the same on the spot.

"12. Every order given to or for the Dispatch Company whether by telephone, telegraph, in writing, or otherwise shall be regarded as being made under and subject to the terms and conditions herein contained. Every purchase from the Dispatch Company of bananas or fruit, and every sale thereof by it, shall be upon and subject to all the terms, conditions, and provisions herein contained in every respect, unless waived in a writing signed by the president or general manager of the Dispatch Company, it being expressly stated and understood that no officer, employee, or representative of the Dispatch Company, except only the president or the general manager, has any authority to make any contract or sale of bananas or fruit except upon and subject to the said terms, conditions and provisions."

It is proven and not denied that J. S. Crutchfield, resident manager of the Fruit Dispatch Company at Pittsburg, called

up defendant at Moundsville by telephone, and asked him if he did not want a car of bananas that week. He says: "Mr. Ellis finally decided that he wanted a car of Santa Marta eight hands; that is, eight hands to the bunch." They disagree as to the point of delivery. Mr. Ellis swears that Mr. Crutchfield agreed to deliver the bananas in Moundsville in good condition for handling, that is, green. On the other hand, Mr. Crutchfield testifies that they were to be delivered, green and in good condition, on board the car in New York. On the day of the telephone conversation Mr. Crutchfield wrote defendant, acknowledging receipt of the telephone order and stating the price "to be $2.20 per cwt. f o. b. seaboard." There is no dispute as to price. The letter concluded as follows: "This memorandum is merely an acknowledgment and not an acceptance of your order, which is to be accepted only by shipment, and upon and subject to the terms printed on the back hereof." On the back of the letter appeared the "Uniform Conditions Governing Sales," containing the clauses above quoted. Mr. Ellis did not reply to the letter and says he did not read it. He further says: "When the paper come to the house I asked the girl what is that for, and she say for the car of bananas, they going to ship them."

The bananas were shipped from New York on the 17th and arrived in Moundsville on the morning of the 21st of June, too ripe to be handled, and defendant immediately wired plaintiff at Pittsburg as follows: "Bananas arrived. Dead ripe. Refuse them. Not what we ordered." Four or five witnesses for plaintiff testify that the fruit was green and in good condition and was carefully loaded in a properly ventilated car, at New York on the 17th of June. The only evidence conflicting with this positive testimony is the opinion evidence of some of defendant's witnesses that, if the bananas were in proper condition when shipped, it would require eight to ten days for them to ripen. On the other hand, other witnesses for plaintiff testify that, in warm damp weather, and especially during thunder storms, bananas will frequently ripen in twenty-four hours. The state of the weather between New York and Moundsville, while the fruit was in transit, does not appear. It is proven and not denied that the bananas were over ripe when they reached Moundsville.

The Fruit Dispatch Company is a corporation and conducts its business by its agents or managers. J. S. Crutchfield was its resident manager at Pittsburg. It is a general rule of law that a person dealing with an agent must take knowledge of the extent of the agent's authority. But this rule is qualified by another, which is also general, and that is, that a general agent having authority to transact certain business for his principal has also the implied power to do what is customary and necessary in the exercise of his general powers. Hence Mr. Crutchfield's general power to sell fruit would, if not restricted, carry with it the implied power to contract respecting the place of delivery. *Bank* v. *Bryan,* 72 W. Va. 29; *Board of Education* v. *Harvey,* 70 W. Va. 480; *Coles* v. *Jefferson Ins. Co.,* 41 W. Va. 261, 23 S. E. 732; *Rohrbough* v. *Express Co.,* 50 W. Va. 148, 40 S. E. 398. But notwithstanding such implied authority, the principal may limit his agent in the exercise thereof, and thereby relieve himself from liability; provided those dealing with the agent have knowledge thereof. *Rohrbough* v. *Express Co., supra.*

"Private instructions to a general agent circumscribing his power will not avail to shield the principal from liability to parties dealing with him in ignorance of the limitation." 1 A. & E. E. L. (2nd ed.), 994, and numerous cases cited in note 2; 1 Clark & Skyles on Agency, 470; Story on Agency, Secs. 73, 126, and 133.

Mr. Crutchfield's authority as plaintiff's agent was limited by the written conditions above quoted. He could not bind the Fruit Dispatch Company by agreeing to deliver the bananas in Moundsville if defendant had notice of the limitation upon his implied authority to do so. The written conditions had been placed in defendant's hands as early as 1904, and a witness testifies that he explained them to him, but he denies it. However, he admits having them, and granting that he was ignorant of the English language, it was nevertheless his duty to inform himself as to the contents of the paper, and he was in a situation to do so, for it appears that he had in his employ a girl who could read English. He testifies that on receipt of the letter of June 16th from Mr. Crutchfield, he handed it to the girl, and that she told him it

was concerning the car of bananas, that they were going to ship them. The conditions are on the back of the letter, and defendant's attention was again expressly called to them by the language of the letter, which stated that his order would be "accepted only by shipment, and upon and subject to the terms printed on the back hereof." If defendant did not intend to abide by the terms therein expressed he should have countermanded his order, for the letter does not advise that the shipment had then been made. We do not mean to intimate that plaintiff could subsequently change the terms of a sale made by its general sales agent to a person ignorant of his limited authority and thereby bind the purchaser. This, of course, it could not do. But the letter was an additional notice to defendant of the agent's limited authority. The case turns on the question of notice to defendant of Mr. Crutchfield's lack of authority to make such a contract of sale as defendant testifies he did make. Plaintiff did all that could reasonably be expected of him to inform defendant of the prescribed authority of its agent; and if he did not read, or have read to him, the conditions governing sales, it was his own fault. The law does not excuse him on the ground of ignorance of the English language.

Clause 1 of the conditions says delivery shall be made at the seaboard f. o. b. of all fruit sold, except special sales provided for in clause 11, and that clause has no application here. It only applies to sales made after fruit has reached its final destination, and has been inspected by the buyer. Clause 12 provides that every sale shall be made "subject to all the terms, conditions, and provisions herein contained in every respect, unless waived in a writing signed by the president or general manager of the Dispatch Company." That clause also expressly denies to any other officer, employee or representative of said company authority to make any other contract of sale of fruit or bananas than is provided for in said conditions. Mr. Crutchfield was neither the president or general manager of the plaintiff company, and, therefore, did not have the authority to bind it by such sale as defendant claims he made.

It appears from the instructions given by the court that the

case was tried upon the theory that Mr. Crutchfield, as plaintiff's agent, had authority to bind it by agreeing to deliver the bananas at Moundsville. The jury were instructed, that if they believed a contract was made over the telephone to deliver the fruit in Moundsville, they must find for the defendant; whereas the case depends on the agent's limited authority and defendant's knowledge thereof. It was error to refuse plaintiff's instructions 2 and 3, which would have told the jury that the bananas were sold to be delivered to defendant on board the cars in New York, and that, if they found that they were put on the cars in good condition, and reasonable care used in loading them, they should find for the plaintiff the full amount of the contract price.

The judgment is reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and Remanded.*