SOUTH BRANCH VALLEY NAT'L. BANK, A CORP.

*v.*

CHARLES E. WILLIAMS, JR. ET AL., ETC.

*v.*

METROPOLITAN LIFE INS. CO., A CORP.

(No. 12620)

Submitted May 9, 1967.    Decided July 11, 1967.

776

*D. H. Rodgers, Jr.*, for appellant.

*Hyer, Gibson & Talbott, Milford L. Gibson*, for appellee.

CAPLAN, JUDGE:

The plaintiff, South Branch Valley National Bank, a corporation, instituted a civil action in the Circuit Court of Hardy County to recover from the defendants, Charles E. Williams, Jr. and Ralph J. Bean, Administrator with the will annexed of John T. Williams, deceased, the sum of $10,000.00. This sum represents the amount alleged to be due and owing on two seperate loans obtained from the Bank by Charles E. Williams, Jr. and John T. Williams.

On May 28, 1965, after a trial by the court in lieu of a jury, a judgment was entered in favor of the Bank in the sum of $3,000.00. The judgment order further

provided, in regard to the remaining $7,000.00, that if the plaintiff and Metropolitan Life Insurance Company, which had been impleaded by the defendants as a third party defendant, could not effect an equitable settlement between themselves, the court reserved the right to hear further evidence and argument before passing on that question. Subsequently, on June 28, 1966, judgment was entered wherein it was ordered that the South Branch Valley National Bank recover from Metropolitan Life Insurance Company the sum of $7,000.00. It is from that judgment that this appeal is prosecuted.

Charles E. Williams, Jr. and John T. Williams, his uncle, in furtherance of their joint livestock business, periodically borrowed sums of money from the plaintiff bank. These parties, on October 2, 1963, having obtained a loan, executed a note payable to the order of the Bank in the sum of $5,000.00 and payable in 180 days thereafter. On November 3, 1963, John T. Williams and Charles E. Williams, Jr., renewing a note of July 6, 1963, executed a second note payable to the Bank in the sum of $5,000.00 and payable in 120 days. The funds received from these loans were deposited to the account of Charles E. Williams, Jr. The deposit slips of October 2, 1963 and July 6, 1963, carried a notation which indicated that the amounts deposited were the proceeds of these loans and showed deductions for interest and insurance premiums.

In November, 1960, the Bank made application for and obtained from Metropolitan Life Insurance Company a creditors group life insurance policy. The purpose of this policy was to insure the lives of borrowers from the Bank so that in the event of the death of a borrower, prior to the payment of his loan, the Bank would be paid by the insurer the amount of the unpaid balance. Thereunder, the Bank is called the creditor and any person indebted to it is a debtor. It is provided in the policy that ''If an agreement is executed by more than one person, the person whose

signature appears first on the agreement is the Debtor." Effective November 1, 1962, this policy was amended to provide that "No debtor shall be eligible for insurance hereunder as to any agreement executed on or after his 65th birthday***." A copy of this amendment purportedly was forwarded by the Bank to all of its debtors. The amount of insurance on any debtor, whether indebted under one or more agreements, is limited by the policy to $7,000.00. The aforesaid group policy was in effect and purported to cover all the Bank's eligible debtors when the above loans were obtained by C. E. and John T. Williams.

Prior to the due date of the above notes, John T. Williams died and Ralph J. Bean was appointed Administrator with will annexed of his estate. Upon the refusal of the debtors to pay the amount due on said loans, the Bank instituted an action for recovery thereof against Charles E. Williams, Jr. and Ralph J. Bean, Administrator. Upon the motion of these defendants, Metropolitan Life Insurance Company was made a third party defendant. In the third party complaint it was alleged that the notes involved were a continuation of a series of identical transaction with the Bank, beginning in October, 1961; that credit had been extended to John T. Williams; that his life was insured, thereby assuring payment to the Bank of any indebtedness owing by him; that premiums for such insurance had been collected from the debtor; that premiums were paid to the Bank as an agent of Metropolitan which ultimately received such premiums; and that Metropolitan, having accepted the premiums, owes the creditor under the policy, the Bank, the sum of $10,000.00

As noted above, judgment was entered in favor of the Bank against Charles E. Williams, Jr. and Ralph J. Bean, Administrator of the estate of John T. Williams in the sum of $3,000.00. After further hearing of this matter the trial court expressed its opinion that George J. Ours, the cashier of the Bank, acted as an

agent of the Insurance Company and that his actions in "affecting insurance on the John T. Williams and Charles E. Williams, Jr., loans despite the age of John T. Williams, resulted from his interpretation of the Amendment of November 1, 1962, to the effect that the age prohibition did not apply to one who had been obtained insured bank loans prior to November 1, 1962, and that his conduct as such agent plus the collection of the insurance premiums and transmitting them to the insurance company where they were accepted was binding upon third-party defendant, Metropolitan Life Insurance Company." Judgment was thereupon entered in favor of the Bank and against Metropolitan in the sum of $7,000.00.

It is clear from the exhibits introduced during the proceedings in the trial court, and it is undisputed, that the signature of John T. Williams appears first on the notes in question. Under the provisions of the group policy he was the debtor, whose life was purportedly insured. Furthermore, it is admitted by all that John T. Williams was over sixty-five years of age at the time of the execution of these notes. Mr. Ours testified on numerous occasions during the trial that he knew that John T. Williams was over sixty-five years of age when the notes were executed; that it was his mistake to have permitted John T. Williams' signature to appear first on the note; that he well knew that John T. Williams was ineligible for coverage under the group policy; and that "We had no right to insure him."

In its complaint the Bank proceeded against Charles E. Williams, Jr. and Ralph J. Bean, Administrator of the estate of John T. Williams for recovery of $10,000.-00, the total amount of the two aforesaid loans which remained unpaid. Subsequently, the Bank filed its amended complaint. Therein, it alleged the above indebtedness but asserted that at the time the notes were executed the loans were insured under the creditor group insurance policy; that premiums were deducted

intending to insure the life of Charles E. Williams, Jr.; that the amount of insurance was limited to $7,000.00; that both notes are due, payable and remain unpaid; and that it therefore demanded judgment against the defendants in the sum of $10,000.00. The amended complaint further contained the following: "*** and in event it should be determined that any portion of said loan was payable from proceeds of insurance funds to be realized by reason of the death of John T. Williams that in that event judgment be entered for such amount against the Defendant, Metropolitan Life Insurance Company, for any sum so adjudged to be covered by said insurance policy."

The Bank now adopts the position taken by the trial court which held that Mr. Ours, in collecting and forwarding the premiums to the insurance company, was that company's agent and that his interpretation of the partinent provisions of the insurance policy is chargeable to the insurer.

The Metropolitan Life Insurance Company asserts, however, that the circumstances of this case do not present a question of agency between it and the Bank. Here, it contends, was plainly a contract of insurance between two principals, it being the insurer, and the Bank being the policyholder and insured. It maintains that if Mr. Ours was acting as an agent, he clearly was an agent of the Bank, not the insurance company. Further, Metropolitan says, even if it should be held that Mr. Ours was an agent of the insurance company, he could not issue insurance covering John T. Williams inasmuch as such act is specifically prohibited by the written provisions of the group policy.

One of the principal issues to be resolved on this appeal is whether George J. Ours, the cashier of the Bank, was an agent of Metropolitan in the subject transactions. Applications for the two loans involved in this proceeding were made to Mr. Ours in his capacity as an employee of the Bank. After the loans were approved by the board of directors of the Bank, Mr.

Ours consumated the transactions with the borrowers. The deductions for interest and insurance were made under his supervision. All of these acts were performed on behalf of the Bank and by its employee, Mr. Ours. There is no showing whatever of an agency relationship between Mr. Ours and Metropolitan. There was no contract of agency introduced in evidence, nor was there any indication in the entire record that Mr. Ours was acting on behalf of the third party defendant.

We are not concerned here with the usual type of life insurance policy. Ordinarily the person covered by a life insurance policy is the policyholder and the insured. He purchases the insurance from the company, thereby creating privity of contract between him and the insurer. At his death, his beneficiary is paid by the company. Such is not the case in this instance. The record reveals a contract of insurance between Metropolitan, the insurer, and South Branch Valley National Bank, the policyholder and insured. There was no contract between Metropolitan and John T. Williams. It necessarily follows that Mr. Ours in no manner acted as an agent for the insurance company when he provided for coverage on the loan of John T. Williams.

This was a credit group life insurance policy, designed for the benefit of the Bank. It served to stimulate its loan business by offering this coverage to its debtors and also offered the Bank protection against possible loss by reason of the death of a debtor. The application for this policy reveals that the Bank applied to Metropolitan for this type of coverage. It was signed in the following manner:

"SOUTH BRANCH VALLEY
NATIONAL BANK
(applicant)
By GEORGE J. OURS
Cashier
(Title)"

Mr. Ours, acting on behalf of his principal, the Bank, could hardly also assume the capacity of agent of the insurance company to which the application was made.

It has been contended that Mr. Ours, by collecting the premiums and paying them to the insurer, became an agent of Metropolitan. The procedure, as revealed by the record, was that the amount of the premium was deducted by the Bank from each insured loan and at the end of each month the total sum of all premiums so collected was remitted to Metropolitan. The insurer had no knowledge of the names of the debtors or who did or did not pay premiums to the Bank. Its contract was with the Bank and not the debtors. This presented a mere matter of bookkeeping by Mr. Ours and was a service performed on behalf of the Bank. It was held in *Duval v. Metropolitan Life Insurance Company*, 82 N.H. 543, 136 A. 400, 50 A.L.R. 1276, that a provision in a contract of group insurance which constituted an employer an agent of the insurer for the purpose of taking applications did not make him an agent for other purposes. As herein noted, the policy did not constitute Mr. Ours an agent of the insurer for any purpose.

Demonstrating further that neither the Bank nor Mr. Ours was acting as an agent of the insurer is the following cogent statement of the Court in *Boseman v. Connecticut General Life Insurance Company*, 301 U.S. 196, 57 S. Ct. 686, 81 L. ed. 1036, 110 A.L.R. 732: "When procuring the policy, obtaining applications of employees, taking payroll deduction orders, reporting changes in the insured group, paying premiums and generally in doing whatever may serve to obtain and keep the insurance in force, employers act not as agents of the insurer but for their employees or for themselves." See also *Connecticut General Life Ins. Co. v. Speer*, 185 Ark. 615, 48 S.W. 2d 553; *Leach v. Metropolitan Life Ins. Co.*, 124 Kan. 584, 261 P. 603; *Equitable Life Assur. Soc. of The United States v. Hall*, 253 Ky. 450, 69 S.W. 2d 977; *Dewease v. Travelers Ins. Co.*, 208 N.C. 732, 182 S.E. 447.

It having been decided herein that neither the Bank nor Mr. Ours was an agent of the insurer, it remains

only to determine whether the loan of John T. Williams was insured under the subject creditor group life insurance policy. The contract of insurance entered into between Metropolitan and the Bank unambiguously provides that no debtor shall be eligible for insurance under that policy as to any agreement executed on or after his 65th birthday. This provision became effective on November 1, 1962. The notes in question were executed on October 2, 1963 and November 3, 1963, clearly subsequent to the date of the above exclusionary provision. That John T. Williams was over sixty-five years of age when he executed said notes is not only undisputed, but is readily admitted by all parties.

These salient facts, about which there is no disagreement, prompt a question, the obvious answer to which readily resolves this controversy. In view of the exclusionary age provision in the contract of insurance and of the admitted age of John T. Williams, debtor, when he executed the subject notes, was such debtor eligible for coverage under the Bank's creditor group life insurance policy? Clearly, this debtor was ineligible for coverage under the policy and any attempt to include him within the covered group must be chargeable to the Bank, not the insurer. There exists in this case a contract of insurance between the Bank, as the insured, and Metropolitan, the insurer, both principals to such contract. By reason of the age of the debtor, the loan purported to be insured is expressly excluded from coverage under the group policy.

In view of the foregoing, the judgment of the Circuit Court of Hardy County is reversed and this case is remanded for a new trial.

*Reversed and
remanded.*