341 S.E.2d 679

**Silas J. WARDEN, et al,**

v.

**BANK OF MINGO, et al.   (two cases.)**

**Nos. 16543, 16544.**

Supreme Court of Appeals
of West Virginia.

Dec. 11, 1985.
Rehearing Denied April 4, 1986.

John H. Tinney, William M. Herlihy, Spilman, Thomas, Battle & Klostermeyer, Charleston, Millard E. Jewell, Williamson, for appellants.

Stephen P. Meyer, Meyer & Perfater, Charleston, for appellees.

BROTHERTON, Justice:

This case presents two consolidated appeals from a judgment of the Circuit Court of Mingo County granting Silas J. and Christine Warden judgment against the appellants, The Bank of Mingo and Appalachian Life Insurance Company, in the amounts of $10,000.00 and $24,916.87, respectively. We find error in the lower court's decision and reverse.

The basic facts are not in dispute. The Bank of Mingo maintained a group creditor insurance policy with Appalachian Life Insurance Company for a number of years. Through this policy the bank offered life and health insurance to its loan customers and received 40% of each premium as a commission.

During 1977 Silas J. and Christine Warden obtained a loan in the amount of $40,000 from the bank in order to purchase a garbage collection business. During the negotiations for the loan Silas Warden, as a condition of taking the loan, requested credit life and disability insurance with monthly payments of a sum sufficient to meet the Wardens' loan payments and was assured by Mr. A.D. McCormick, Vice President of the Bank of Mingo, that this could be provided. At the loan closing, Mr. McCormick issued a certificate of insurance to Silas J. Warden, listing life insurance in the amount of $10,000 as well as a monthly disability benefit of $250 for the 120-month life of the loan. Unfortunately, an error

was made in the preparation of the certificate. The maximum amount of insurance coverage which the bank could request under their master policy with Appalachian Life was limited to $10,000 in each type of insurance. Spread over 120 months, this meant that the bank could only provide a monthly disability benefit of $83.33 instead of the $250.00 per month benefit shown in the certificate. Upon discovering the error, Appalachian voided the first certificate and replaced it with a corrected certificate which provided for monthly disability of $83.33. The premium remained unchanged.

On December 15, 1977, Mr. McCormick notified the Wardens that there was an error in their insurance certificate and that it had been replaced by a new certificate. Six months later Mr. Warden became disabled due to arthritis and occupational pneumoconiosis. Appalachian paid the accident and health benefit of $83.33 per month until the loan was paid in full on January 18, 1985.

On March 17, 1982, the Wardens filed a complaint in the Circuit Court of Mingo County against Appalachian and the bank (which complaint was subsequently amended twice). On May 17, 1983, a jury found Appalachian liable for $24,916.87 in compensatory damages and The Bank of Mingo liable for $10,000.00 in punitive damages, from which verdict both defendants appeal.

I.

In resolving the legal dispute between the parties, we look first to the instrument which is at the root of the controversy, the certificate of insurance. However titled, the certificate of insurance appears to us to be a memorandum evidencing a contract. A contract is an offer and acceptance supported by consideration. *See* syl. pt. 1, *First National Bank v. Marietta Mfg. Co.*, 151 W.Va. 636, 153 S.E.2d 172 (1967). In this case, the bank offered to supply insurance to Mr. Warden on the terms he had requested, and the Wardens accepted that offer and paid a premium in consideration of the insurance. Therefore, when Mr. Warden agreed to the

terms set forth by the bank in the initial certificate of insurance, a contract was formed.[1]

■ The appellants in this action argue that there was a mutual mistake when the certificate was made out so as to provide more insurance than the bank intended to provide and that a contract is reformable or voidable if it can be shown that the parties mutually erred about a basic fact material to their agreement. *See, e.g., McGinnis v. Cayton*, 173 W.Va. 102, 312 S.E.2d 765, 769–70 (1984). While we agree that a mistake was made, the mistake was not mutual. The Wardens requested and received a contract for $250.00 per month disability payments. The bank, under the master policy with Appalachian, could only provide a contract that would pay monthly disability payments of $83.33. The mistake was made by the bank. The mistake, therefore, was not mutual, but unilateral. It is well established that a party may not avoid a contract on the ground of mistake where that mistake was the result of his own negligence. *See* syl. pt. 4, *Webb v. Webb*, 171 W.Va. 614, 301 S.E.2d 570 (1983). Therefore, the appellants' attempt to void the first certificate and replace it with a second, without any acceptance of the modification by the Wardens, was ineffective.

■ Turning our attention to which of the appellants were bound by the contract, we hold that both appellants, were legally bound. The Bank of Mingo had authority to issue a certificate of insurance under the master policy with Appalachian, but, by its own admission, acted beyond the scope of this authority in preparing a certificate of insurance for the Wardens with a disability benefit of $250.00 per month.[2] When an agent exceeds the power vested in him by the principal, he becomes personally bound on the contract. *Cf. Browne v. Hare*, 112 W.Va. 648, 649, 166 S.E. 362, 362 (1932)

(agent not bound where law prohibited principal from entering into contract—implying that principal would have been liable even for unauthorized agreement in absence of law precluding such agreement). Therefore, when the bank exceeded the powers given to it by the principal, Appalachian Life Insurance Co., the bank itself became bound on the contract.

Nevertheless, the bank's mistake does not exculpate Appalachian, which relies heavily on this Court's decision in *South Branch Valley Nat'l Bank v. Williams*, 151 W.Va. 775, 155 S.E.2d 845 (1967), in arguing that the bank was not its agent. In *South Branch*, a bank sued the estate of a deceased creditor for the $10,000 balance of loans due. The estate impleaded the bank's credit life insurance company, asserting that the loans should be paid by the insurer. The insurer responded in defense that the debtor was over age 65 when the loans were made, and that the policy specifically excluded debtors over that age. This Court on appeal found that the policy in issue in *South Branch* was strictly between the insurer and the bank, and that the debtor had shown neither a contract between itself and the insurer, nor an agency relationship between the insurer and the bank. This holding is summarized in syllabus point 2:

> In a creditors group life insurance policy whereby the lives of the eligible debtors of the insured bank are insured to protect the bank against loss in the event of the death of a debtor the contract for such insurance is between the bank and the insurance company as principals, there being no contractual relationship between the debtors and the insurer.

The debtor in *South Branch* had no certificate of insurance and did not contract for the insurance. The group credit life insurance policy was issued to the bank for

---

**1.** Our opinion might have been different if the certificate of insurance had boldly printed a warning to the debtor that insurance coverage under the certificate was subject to approval by Appalachian. This is a hypothetical question, however, because no such warning appeared on the certificate in this case.

**2.** A bank vice president testified at trial that the "error was my error." A bank is a corporation which, by necessity, acts and speaks by its officers, and what the officers say when in discharge of a corporate duty is evidence against the bank. *See Muhleman v. National Ins. Co.*, 6 W.Va. 508, 516 (1873).

the benefit of the bank, insuring it from the loss of an asset, *i.e.*, the money loaned to one of its debtors. When the bank loaned money to a new debtor, he was added to the policy, much like a person would add a second car to his automobile policy. The debtor had no discretion as to whether to purchase the insurance, and entered into no agreement with the insurer. For this reason, the Court held that the insured party in *South Branch* was the bank, not the debtor.

■ The Bank of Mingo's procedures, however, were different than those of South Branch. The Bank of Mingo's debtors contracted with the bank for insurance, and were issued a certificate of insurance. The master policy did not insure the bank so much as it set out the terms of the bank's agency. The debtors paid the premiums on the insurance. It was the debtors' health and lives and not the debts that were insured.[3] If a debtor were to die or became disabled the debt would be erased from his estate with no right of subrogation by the insurance company.[4] That the master policy called the bank the "insured" is unimportant. In reality, the bank was merely a beneficiary of policies which they sold to their debtors as an agent of the insurance company under the authority of the group policy.

■ Other facts support our conclusion that the bank was the agent of Appalachian, rather than the insured. The bank solicited debtors to buy insurance, negotiated the contracts and issued certificates of insurance which put into effect binding contracts. An insurance agent is defined in the West Virginia Code as "an individual appointed by an insurer to *solicit, negotiate, effect,* or countersign insurance contracts in its behalf." (emphasis added)

W.Va.Code § 33–1–12 (1982). While the bank did not countersign insurance contracts, it did solicit, negotiate, and effect those contracts. The common law definition of an agent, a person authorized by another to act for him,[5] is also satisfied. The certificate bears Appalachian Life's name on the front and is signed by its president and secretary on the back. The bank was authorized to act for Appalachian in filling in and issuing these forms. The authority to fill in and issue blank forms, pre-signed by the corporation's president and secretary on the back, is conclusive evidence of an agency relationship. *See Loubat v. Audubon Life Ins. Co.,* 170 So.2d 745, 747–48 (La.App.1964). *See generally* 19 *Couch on Insurance 2d* § 82:5 (rev. ed. 1983). Also of interest is the fact that Appalachian paid the bank a 40% commission on each insured debtor's premiums. A policyholder generally does not receive a commission for expanding his insurance coverage. Instead, a commission is earned by an agent selling insurance to third parties. We, therefore, hold that where a creditor under a group credit policy was furnished blank forms, and the forms were completed by the creditor's employees and delivered to the debtors advising them of coverage under and subject to the master policy, the creditor was the agent of the insurer in issuing the certificates of insurance.

■ The fact that the bank exceeded its legitimate authority is of little assistance to Appalachian in this case. "[T]he actions and statements of an agent who has actual authority to enter into a contract on behalf of a principal will bind the principal to all the elements of that contract, even though particular statements may have been unauthorized." *Thompson v. Stuckey,* 171 W.Va. 483, 300 S.E.2d 295, 299 (1983).[6]

---

3. *See Betts v. Brown,* 219 Ga. 782, 785, 136 S.E.2d 365, 368 (1964).

4. Payment of a debt with the proceeds of credit life insurance, where the insured authorized the creditor to procure the policy and pays the premiums himself, is payment by the insured debtor. *See, e.g., Hatley v. Johnston,* 265 N.C. 73, 83, 143 S.E.2d 260, 268 (1965).

5. *Black's Law Dictionary* 59 (5th ed. 1979).

6. An exception to this rule exists where the contracting party knew or should have known that the agent was acting in excess of his authority. *See Fruit Dispatch Co. v. Ellis,* 75 W.Va. 52, 55, 83 S.E. 187, 188 (1914). In the present case, however, there was nothing to indicate to the Wardens that the bank was exceeding its authority and, therefore, the exception is inapplicable.

Because the bank had actual authority from Appalachian to fill in and issue certificates of insurance, and it completed the certificate of insurance within its apparent authority, the fact that the bank exceeded its actual authority is unimportant. The contract evidenced by the certificate of insurance is binding upon Appalachian.

## II.

While the Wardens make a sufficient case to bind both the appellants in contract, their evidence to sustain a verdict for punitive damages is totally lacking. The appellants' attorney at trial admitted that he had no direct evidence of fraud and the record showed little, if any, circumstantial evidence of fraud. What the record overwhelmingly showed was an honest mistake by the bank in issuing a policy for more than the authorized amount.

Despite there being no substantial evidence of fraud in the record, the trial court instructed the jury on this issue. It is error to give a jury instruction on an issue when there is no basis in the evidence for such instruction. *See Skeen v. C & G Corp.*, 155 W.Va. 547, 553, 185 S.E.2d 493, 498 (1971). The instruction obviously worked prejudice to the Bank of Mingo, because the jury returned a verdict of $10,000.00 in punitive damages against the bank. Punitive damages are allowed only where there has been malice, fraud, oppression, or gross negligence. A wrongful act done under a bona fide claim of right and without malice in any form constitutes no basis for punitive damages. *See* syl. pt. 3, *Jopling v. Bluefield Water Works & Improvement Co.*, 70 W.Va. 670, 74 S.E. 943 (1912). Therefore, punitive damages are generally unavailable in pure contract actions. *See, e.g., Gasque v. Mooers Motor Car Co., Inc.*, 227 Va. 154, 159, 313 S.E.2d 384, 388 (1984).[7] The Wardens did not show any willful or wanton conduct. Therefore, the award of punitive damages against the Bank of Mingo was in error.

---

7. However, this rule does not apply in exceptional cases where the breach of contract amounts to an independent and willful tort since the plaintiff has the right to elect whether

Normally we would remand the case for a new trial, but it appears that the undisputed facts of the case show:

1. That a legally binding contract was formed between the Wardens and the appellants for disability insurance;

2. The Bank of Mingo and Appalachian Life are both bound by the contract; and

3. Other claims by the Wardens against the appellants are groundless.

The amount of damages was clear and has already been calculated by the trial court to be $24,916.87. We see no issues left for the trial court to decide.

Therefore, the judgment of the Circuit Court of Mingo County is hereby reversed and the case remanded with instructions to enter judgment against the defendants, Bank of Mingo and Appalachian Life Insurance Company, jointly and severally, in the amount of $24,916.87.

Reversed and remanded with directions.

---

he will proceed in tort or upon contract. *See Goodstein v. Weinberg*, 219 Va. 105, 109, 245 S.E.2d 140, 143 (1978).