403 S.E.2d 424

**Ernest G. KELLER, Administrator with Will Annexed of the Estate of Georgia Keller, and Ernest E. Keller**

v.

**FIRST NATIONAL BANK, and Integon Life Insurance.**

**No. 19691.**

Supreme Court of Appeals of West Virginia.

March 14, 1991.

682

Truman Sayre, Jr., Sayre & Sayre, Beckley, for Ernest G. Keller.

C. Berkley Lilly, Gorman, Sheatsley & Hutchinson, Beckley, for First Nat. Bank.

Robert File, File, Payne, Scherer & Brown, Beckley, for Integon Life Ins. Corp.

NEELY, Justice:

Ernest G. Keller, administrator of the estate of Georgia Keller, and Ernest E. Keller appeal the dismissal of their suit concerning credit life insurance against the First National Bank of Beckley and Integon Life Insurance Co. Finding that no credit life insurance was in effect when Georgia Keller died, the Circuit Court of Raleigh County dismissed the action. Based on our review of the record, we find that the Kellers have alleged a set of facts, which, if true, could establish liability. We, therefore, reverse the circuit court's decision and remand the case for further development.

On 21 November 1986, Georgia Keller and her husband, Ernest E. Keller, borrowed $12,656.25 from the Bank. The 1986 loan's term was for one year and the loan was evidenced by a promissory note secured by a deed of trust. Georgia Keller purchased credit life insurance for the 1986

loan through Integon's agent, the Bank,[1] and a Certificate of Insurance was issued. Ernest E. Keller did not purchase credit life insurance because his age exceeded the maximum age allowed under the insurance policy.

At the end of the one-year term, the Bank renewed the loan for another year and the loan was evidenced by a renewal note dated 18 November 1987.[2] Although the Bank maintains that its personnel were aware of Mrs. Keller's deteriorating health, the renewal note nonetheless included, among the amounts to be financed, a $150 charge for credit life insurance. The renewal note required monthly payments of $200 with a final balloon payment of $11,091.82 due on 18 November 1988.

The insurance section of the renewal note began with the following preprinted information:

> Credit life insurance ... [is] not required to obtain credit, and will not be provided unless I sign and agree to pay the additional cost.

Immediately below this provision, the Bank had inserted a charge of $150 for the credit life premium with the term noted as "level 12 mo." Next to inserted information the Bank's form stated, "I want credit life insurance" and the initials EGK appear. The following signature appears on the renewal note "Ernest Keller [and] Georgia Keller by EG Keller Power of attorney."

The Bank maintains that it received the renewal note on 1 December 1987, and immediately entered it into the computer. Later that same day, Bradley Wartella, President of the Bank, reviewed the renewal note and "caught the error showing a charge for insurance that was added to the principal." Mr. Wartella maintains that on 2 December 1987, he corrected the error by deducting the $150 insurance charge from the amount financed. However, the Bank did not notify the Kellers in writing that credit life insurance would not be issued or that the insurance charge was in error and had been deducted from the principal financed. The monthly payments required by the renewal note remained the same and the Kellers were not given a new renewal note. Mr. Wartella asserts that he told Ernest G. Keller, the son who signed the renewal note, both before and after the execution of the renewal note that no credit life insurance could be issued for his mother, Georgia Keller.[3]

Georgia Keller died on 5 September 1988, which was during the term of the renewal note. The Bank and Integon refused to pay any insurance benefits, claiming that no credit life insurance was in effect when Mrs. Keller died. Ernest G. Keller maintains that although "[n]o person at the bank orally represented that Georgia Keller had credit life insurance coverage," "no one had told me that we could not receive Credit Life Insurance." Mr. Keller also maintains that he believed that the credit life insurance premium was financed and included in the monthly payments on the renewal note. Mr. Keller also states that he "relied upon the fact that there was Credit Life Insurance upon Georgia Keller."

The Kellers sued the Bank and Integon on 25 October 1988 and both defendants

---

1. Both defendants acknowledge that the Bank is an agent for the insurance company. However the insurance company can refuse applications received from the Bank; according to the certificate of insurance issued by Integon to the Kellers for the 1986 loan:

> If ... the ... Debtor is found to be unacceptable ... the insurance on that Debtor will not become effective. Notice of this will be mailed to the creditor and the debtor. All of this must be done within 60 days of the effective date shown on the schedule.

2. The Bank maintains that it received the renewal note on 1 December 1987 and the Kellers maintain that the renewal note was signed 18 November 1987 and immediately returned to the Bank.

3. Mr. Wartella submitted an affidavit in support of the Bank's motion to dismiss that contained this information. The Bank also submitted an affidavit from Kristan Foster, an Assistant Vice President, who stated that she knew that Mrs. Keller was ill and

> ... that she [Ms. Foster] is informed and very much believes and charges as a fact to be that the son and attorney-in-fact for Georgia Keller was told more than once that his mother could not qualify for credit life insurance; that he as her attorney-in-fact could not make an application for her.

immediately filed motions to dismiss claiming that no credit life insurance policy was in effect. Following limited discovery, by order entered on August 3, 1989, the circuit court dismissed both defendants based on his finding that no insurance policy was in effect. The Kellers appeal and we reverse.

## I

This case is only a slightly different mutation of almost all insurance cases, because despite of the appearance of a contract on the renewal note, the defendants claim there was no insurance policy.[4] In most insurance cases, the plaintiffs pay for and believe they have insurance, to discover only after disaster strikes, no insurance. The insurer has the plaintiffs' money and after the disaster—fire, death or accident—informs the plaintiffs that no insurance covers the fire, death or accident. Although the after-the-fact denial of coverage scenario is repeated numerous times, without the disaster, the insurer does not refund the insurance premium. Under this system the insured always loses; without a disaster, the insurer keeps the premium even though there was no insurance and with a disaster, the potential insured becomes uninsured and the insurer returns the premium. In this case, the $150 premium was taken off the unpaid debt of the plaintiffs.

■ Most people expect insurance once they pay the premium, but in the present case, even though the premium was paid, insurance was denied. In order to eliminate an insured's doubt about coverage, we find that once an insurer creates a reasonable expectation of insurance coverage, the insurer must give the coverage or promptly notify the insured of the denial.[5] When an insurer creates a reasonable expectation of insurance coverage and accepts a premium, the denial notice, in order to be effective, must include a refund of the premium. The promptness of the denial notice is determined by the circumstances of each case; however, in any event, in order for a denial notice to be effective, such notice must be given no more than 30 days after the insurer created the reasonable expectation of coverage. Under this rule, once an insurer creates a reasonable expectation of insurance coverage, the insured is assured of coverage or a prompt notice of denial, which would give the insured the opportunity to seek other ways of limiting the risk.

Generally, an insured deals with an insurance company through an insurance agent, who generally is authorized to act for the insurance company. *W. Va. Code*, 33-1-12 [1957] defines an insurance agent as "an individual appointed by an insurer to solicit, negotiate, effect or countersign insurance contracts in its behalf." Therefore, an insurance agent "who has actual authority to enter into a contract on behalf of a principal will bind the principal to all the elements of that contract, even though particular statements may have been unauthorized." *Warden, supra* n. 5, 176 W.Va. at 64, 341 S.E.2d at 684 (quoting *Thompson v. Stuckey*, 171 W.Va. 483, 300 S.E.2d 295, 299 (1983)).

■ When credit life insurance is purchased, generally the creditor acts as an agent for the insurance company. In Syllabus Point 2, *Warden, supra* n. 5, we stated:

4. Because this case appeals a decision on a motion to dismiss, we consider the complaint in the light most favorable to the plaintiffs and consider their allegations as true. *See McGinnis v. Cayton*, 173 W.Va. 102, 312 S.E.2d 765 (1984); *Sticklen v. Kittle*, 168 W.Va. 147, 287 S.E.2d 148 (1981).

5. An insurance contract, similar to other contracts, "is an offer and acceptance supported by consideration." *Warden v. Bank of Mingo*, 176 W.Va. 60, 63, 341 S.E.2d 679, 682 (1985). The application for insurance is the offer, which the insurer then decides to accept, reject or modify.

The insurer then issues a policy or certificate of insurance that evidences the insurance contract. *Id.*

These procedures are designed to protect the insurer; however, when an insurer by its actions creates a reasonable expectation of insurance, coverage will not be denied merely because the insurer neglected to use its procedures.

However, if an insurer is fraudulently induced by the insured to abandon its procedures, no reasonable expectation of insurance can be created.

Where a creditor under a credit life insurance policy was furnished blank forms, and the forms were completed by the creditor's employees and delivered to the debtors advising them of coverage under and subject to the master policy, the creditor was the agent of the insurer in issuing the certificates of insurance. If the creditor, who is an agent for an insurance company, creates a reasonable expectation of insurance coverage, then both the insurance company and the creditor would be bound.

■ In order to recover damages based on an expectation of insurance, a plaintiff must prove that the insurer created a reasonable expectation of insurance coverage. The defendant, in addition to disproving the reasonableness of the plaintiff's expectation, can also prevail by showing that timely notice of denial was given and, when applicable, that the premium was returned. An action based on a reasonable expectation of insurance usually will raise substantial questions of fact.

Other cases recognizing that insurance can be based on a reasonable expectation are either based on a procedure, which fosters a misconception about the insurance to be purchased, or a contract to procure insurance. A reasonable expectation of insurance based on a procedural exception recognizes that an insurer by its actions can forego the safeguards of its procedures or written policies. In *Warden, supra* n. 5, although the master policy limited coverage to $10,000 for each type of insurance, the bank, an agent of the insurance company, issued a certificate of insurance for a monthly disability benefit that exceeded the limits of the master policy. We found that the certificate was a contract that bound both the bank and insurance company. In *Romano v. New England Mutual Life Ins. Co.*, 178 W.Va. 523, 362 S.E.2d 334 (1987), we found that the insurer could not avoid liability based on a condition of the policy that was not contained in the promotional materials. *See Lachs v. Fidelity & Casualty Co. of New York*, 306 N.Y. 357, 118 N.E.2d 555 (1954) (holding an insurer, who placed its vending machine directly in front of a charter airline counter, liable when the insured died on a charter flight even though the policy excluded charter flight coverage); *Riordan v. Automobile Club of New York, Inc.*, 422 N.Y.S.2d 811, 100 Misc.2d 638 (N.Y.Supp. 1979) (holding that a mail order solicitation of insurance was an offer that invited acceptance by mailing an application and a check to the insurance company).

■ A reasonable expectation of insurance can be created when a creditor's offer to obtain credit life insurance is accepted and the premium is financed or paid. In *Virginia First Savings & Loan Association v. Wells*, 224 Va. 691, 299 S.E.2d 370 (1983), the Virginia Supreme Court upheld a jury decision in favor of the insured based on the bank's failure to submit an application for credit life insurance to an insurance company although premiums were collected for three years. Damages were the amount that would have been recovered if an insurance policy had been obtained. *Id.* at 695, 299 S.E.2d at 373.

In *Consumers Financing Corp. v. Lamb*, 218 Ga. 343, 127 S.E.2d 914 (1962), a finance company that added the credit life premium to the amount of the car loan but failed to obtain insurance or notify the purchaser of the lack of insurance was held liable. The Georgia Supreme Court refused to allow the finance company to take advantage of the delay that "renders the plaintiff unable to do what could have been done had the defendant promptly notified him." *Id.* at 345, 127 S.E.2d at 916.

In *Walters v. First National Bank of Newark*, 69 Ohio St.2d 677, 433 N.E.2d 608 (1982), a bank was held liable based upon its failure to fulfill its promise to make the credit life insurance immediately effective. In *Parnell v. First Saving and Loan Association of Leakesville*, 336 So.2d 764, 767 (Miss.1976), a bank that included the premium for credit life insurance in the amount of the loan was held to assume a "contractual obligation to properly apply the amount to credit life insurance." The Mississippi Supreme Court noted that "[c]redit life insurance is also a very important and vital part of the transaction to the borrow-

er because it offers absolute protection to his estate for the unpaid balance of the debt...." *Id.* at 767–68.

*See Scarsdale Villas Associates, Ltd. v. Korman Associates Insurance Agency, Inc.,* 178 Ill.App.3d 261, 127 Ill.Dec. 463, 533 N.E.2d 81, 83 (Ill.App.1988); *Watkins v. Valley Fidelity Bank and Trust Co.,* 63 Tenn.App. 493, 474 S.W.2d 915 (Tenn.App. 1971); *Sutton v. First National Bank of Crossville,* 620 S.W.2d 526 (Tenn.App. 1981); *Pickett v. First American Saving & Loan Association,* 90 Ill.App.3d 245, 45 Ill.Dec. 531, 412 N.E.2d 1113 (Ill.App.1980); *Terry v. Avemco Ins. Co.,* 663 F.Supp. 39 (D.Colo.1987); 44 C.J.S. Insurance § 225 (1945): 12A J. Appleman, *Insurance Law and Practice,* § 7216 (1981).

■ Our recognition of a claim based on a reasonable expectation of insurance is consistent with "our traditional rule that any ambiguities in an insurance policy ... be resolved in favor of the insured. (Citations omitted)." *Staley v. Municipal Mutual Insurance Co. of W.Va.,* 168 W.Va. 84, 282 S.E.2d 56, 59 (1981); *Romano, supra; Keffer v. Prudential Insurance Company of America,* 153 W.Va. 813, 816–17, 172 S.E.2d 714, 716 (1970). As part of our traditional rule, we require a notice of cancellation of insurance to be clear, definite and certain. In the Syllabus of *Staley, supra,* we stated:

A notice of cancellation of insurance must be clear, definite and certain. While it is not necessary that the notice be in any particular form, it must contain such a clear expression of intent to cancel the policy that the intent to cancel would be apparent to the ordinary person. All ambiguities in the notice will be resolved in favor of the insured.

**6.** *See Warden, supra,* 176 W.Va. at 63–65, 341 S.E.2d at 682–84, for a discussion of an insurance company's liability for the actions of its agent, a bank.

**7.** As Judge Learned Hand noted in *National City Bank of New York,* 200 F. 287, 293 (S.D.N.Y. 1911):

A contract is an obligation attached by mere force of law to certain acts of the parties,

## II

■ Although the present case has some procedures, which foster a misconception about the insurance to be purchased, the expectation of insurance is based primarily on the Bank's renewal note. In the renewal note, the Bank offered credit life insurance, the Kellers accepted and the premium was financed. On its face the renewal note appears to contain "an offer and acceptance supported by consideration"—a contract. *Warden, supra* n. 5, 176 W.Va. at 62–63, 341 S.E.2d at 682. A fair reading of the renewal note is that the Bank, as an agent for the Integon, offered insurance and that the Kellers accepted the offer and tendered the money.[6] Although the Bank decided its offer was a mistake and allegedly deducted the premium from the amount financed, the Bank failed to notify the Kellers in writing of its actions and the resulting lack of a credit life insurance policy. We find that the Bank had no obligation to insure for the Kellers, but once the Bank's offer to insure, even though mistakenly made, was accepted with consideration, the Bank created an expectation of credit life insurance for Georgia Keller.[7] In the event that credit life insurance could not be obtained, the Bank had an obligation immediately to notify the Kellers of the lack of insurance. Although this notification would be effective if done orally, the burden is upon the Bank to demonstrate by a preponderance of the evidence not only that an *oral* notification was given; but also that it was understood. No such requirement for demonstrating understanding exists with a written notification. *See supra* p. 428.

The Bank alleges that despite the renewal note the Kellers did not have any expectation of insurance because the Bank's president had told Ernest G. Keller, the Kellers' son, that Mrs. Keller could not be

usually words, which ordinarily accompany and represent a known intent. If, however, it were proved by twenty bishops that either party, when he used the words, intended something else than the usual meaning which the law imposes on them, he would still be held, unless there was some mutual mistake, or something else of the sort.

insured both before and after the renewal note.[8] However, Mr. Keller denies that anyone at the Bank told him that his mother was not insured. In any event, no written notice was sent to the Kellers and the monthly payment on the renewal note remained the same. Therefore, on remand, the following questions of fact need to be addressed: (1) was notice of denial given by the Bank; (2) was the denial notice understood; and (3) did the Bank, in fact, credit the insurance premium to the Kellers' debt.

▪ The Bank argues that any expectation of insurance was unreasonable because Mrs. Keller did not complete the insurance application in person and no certificate of insurance was issued. Although the record establishes that Mrs. Keller did not complete an application in person and that no certificate of insurance was issued, the record fails to show that Mrs. Keller knew the application procedures and that failure to follow them would mean no credit life insurance. The Bank, which controlled all the pertinent information about the insurance and the application process, had a duty fairly to disclose the mechanics of procuring insurance. Mrs. Keller should not be denied insurance if the Bank's failure to provide information caused the irregularities in the application process. *See National Mutual Insurance Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987) (discussing the expectation of coverage because of the terms of an in-effect insurance policy); *Stone v. Davis*, 66 Ohio St.2d 74, 78, 419 N.E.2d 1094 (1981), *cert. denied* 454 U.S. 1081, 102 S.Ct. 634, 70 L.Ed.2d 614 (1981) (holding a "bank acts as its customer's fiduciary and is under a duty to fairly disclose to the customer the mechanics of procuring such insurance").

▪ Finally the Bank asserts that Mrs. Keller's health made her uninsurable. However, the record, at this stage, does not resolve the question of Mrs. Keller's health. Although the Kellers must show that Mrs. Keller could have applied in person for the insurance and that, at that point, had a reasonable expectation of insurance coverage, the Kellers are not required to prove that Mrs. Keller could have obtained insurance from another source. Once the Kellers establish that a person with Mrs. Keller's health had a reasonable expectation of insurance, the Bank, in order to prevail, would have to prove the unreasonableness of the expectation. Once the reasonableness of the expectation is established, any ambiguity concerning the health of the insured should be resolved in favor of the insured because the Bank, by its failure to give notice of the denial, created the problem and should not benefit by it. *See Virginia First, supra* at 696, 299 S.E.2d at 372–373 (holding that the Bank "having created the ambiguity [of insurability], will not be permitted to rely on it as a defense to the damages arising from its breach of contract."); *Consumers, supra* at 345, 127 S.E.2d at 916 (holding that because the finance company failed to notify the decedent that no insurance was obtained, equity and good conscience would not allow the finance company to "take advantage of the changed condition" of the plaintiff); *Carrollton Federal Savings & Loans Association v. Young*, 165 Ga.App. 262, 299 S.E.2d 395 (1983) (holding that even if the bank's mortgage life insurance was unavailable because of poor health, evidence of other types of coverage that may have been available was sufficient to show damages).

In conclusion, we find that the Kellers' complaint, viewed in a favorable light, shows that the insurer created a reasonable expectation of insurance and, therefore, the motion to dismiss should not have been granted. The record indicates that several factual questions need to be resolved and that further development is required.

**8.** The Bank and Integon argue that the acceptance on the renewal note is ambiguous because the initials EGK were used. For a discussion concerning ambiguous contracts raising questions of fact, *see* Syllabus Points 1 and 2, *Buckhannon Sales Co. v. Appalantic Corp.*, 175 W.Va. 742, 338 S.E.2d 222 (1985).

For the foregoing reasons, the judgment of the circuit court is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.